## In the matter of the opening of HAMILTON AVENUE, in the City of Brooklyn.

A franchise may be said to be "*taken*" within the meaning of the section of the state constitution, prohibiting the taking of private property for public use, without just compensation, when the owner is deprived of the power or means of exercising it. But it is not taken when its emoluments are merely diminished by an improvement which does not destroy or impair such power or means.

The apprehended damage which a toll bridge company may sustain, in a diminution of their tolls, by a diversion of the travel from their bridge to a public avenue authorized to be opened, is not a grievance for which they are entitled to redress; where the statute granting the franchise does not confer an exclusive right upon the grantees.

When the public good calls for new grants, it is right that they should be made, although they may become rivals to pre-existing establishments made under legislative authority.

Commissioners of estimate and assessment have no powers except those conferred by the statute providing for their appointment.

Where a statute, authorizing the opening of a public avenue, provided for the appointment of commissioners to estimate and assess the expenses of the improvement, and the amount of damages and benefits to be sustained and derived therefrom, by the owners of such "lands or buildings" as might be affected thereby; that they should make the estimate and assessment in the form of a report which should contain an estimate of the expense of the proposed improvement, a brief description of the premises necessary to be *taken* for the purposes thereof, &c. and also of such premises as should be benefited thereby, but of which no part would be required for the proposed improvement, with the names of the persons interested in said premises, a statement of their respective interests, and an estimate of the damages, and an assessment of the damage which would be sustained and derived by them respectively from such improvement, and the proportion of the expense which each ought to bear; *Held*, that the commissioners were confined in their action to the premises, viz. lands or buildings, to be taken or partly taken, and to such premises as would be *benefited*, but of which no part should be taken; but that they had no authority to include lands or premises not taken, wholly or in part, where their owners should be injured by the improvement.

*Held also*, that where the proposed avenue did not take any part of the site of a bridge, but merely crossed over one end thereof, and occupied a portion of the causeway, the damage of the proprietors of the bridge, if any, could not be included in the estimate, or awarded.

*Held further*, that a provision in the statute, giving a discretionary power to the commissioners—where a part of a lot or lots was taken—to include the whole or a part of the residue in their report, with the consent of the owner

or owners, and to estimate separately the value thereof, was inapplicable to roads or bridges of any considerable extent. That if it would include either, it would be an improper exercise of the discretion of the commissioners to include a long bridge and causeway, because it was necessary to take a small part of the causeway, the taking of which would not create any physical obstacle to the travel over the bridge.

The commissioners could not go beyond the part of the premises belonging to the bridge company, which would be included in the proposed avenue.

Commissioners, in reviewing their estimate and assessment, have no right to increase the amount directed to be paid by individuals, for benefits, where no objection has been made to the award stated in the report previously completed and filed.

Their power to review is strictly appellate, and they should be confined in its exercise to the charges to which objections have been made, and to such alterations as the changes they may deem it proper to make in those charges may require.

THIS was an application to confirm the commissioners' report of estimate and assessment in the above matter. The Brooklyn and Gowanus Toll Bridge Company, incorporated by chap. 291, of laws of 1833, appealed from the commissioners' decision, and opposed the confirmation of their report. It appeared that the proposed extension of Hamilton avenue would cross over and take a part of the western end of the bridge of the company, would run immediately by the side of the bridge and the causeway of the company, and would strike the third avenue within a few yards of the company's eastern terminus on that avenue.

The commissioners, by their first report, had assessed the company $944, on the land constituting the causeway, for benefit. Notice was then published, pursuant to section 7 of laws of 1833, chap. 319, that the commissioners would meet to review their report. At such meeting no objection was made by the company to such assessment. By their amended report, which it was now moved to confirm, the commissioners increased the assessment to $1784.

Affidavits were read tending to show that the franchise of the bridge company would be rendered entirely valueless by the proposed improvement; that no tolls could be received by the company, as the new avenue would, besides taking away part of the

bridge, necessarily supersede the use of the residue. It appeared that the value of this franchise was between $30,000 and $32,000, assuming it to be worth a sum of which the net profits represented an interest at seven per cent per annum. The commissioners, in their report, made no award whatever to the company for the loss which they would sustain from the destruction of the value of their franchise.

*B. D. Silliman*, for the bridge company. 1. The commissioners erred in increasing, by their amended and final report, the assessment from $944 to $1784. The company acquiesced in the assessment of $944, and had a right to assume that no change would be made in the amount, unless on notice of intent by the commissioners to do so. No opportunity was afforded the company to file affidavits opposing such increase. The company had no knowledge of the intention of the commissioners to make such increase, nor that it had been made, until notice published (pursuant to section 7, chapter 319, laws of 1833,) that the amended report would be presented for confirmation. No affidavits can be used on the motion to confirm, except such as have been presented to the commissioners. (*Ib.* § 8.) The company now have an assessment against them respecting which they have never been heard, and have had no opportunity of presenting affidavits in opposition to it before the commissioners, and consequently can present none to the court now. (*Ibid.*) The report should therefore be sent back that the company may have opportunity to contest the increase of assessment.

2. The company are entitled to the value of their franchise which is "private property taken for public use." (*Const. of N. Y. art.* 1, § 6.) The statute under which the improvement is made, (*Laws of* 1833, *ch.* 319, §§ 1 *and* 2,) declares the duty of the commissioners who are "to estimate and assess * * * the amount of damages * * * to be sustained * * * (from the improvement) by the *owners* of such lands and buildings as may be *affected* thereby." It is not merely *lands* and *buildings* that are to be paid for, but the damages sustained *by the owners affected.*

The statute does not restrict compensation to buildings and lands, but reaches damages by destruction of a franchise. The owner of a franchise is entitled to such protection. (3 *Kent's Com.* 458, *and cases cited in note a. Cheshire Turnpike Company* v. *Stevens*, 13 *N. Hamp. Rep.* 28. 1 *R. S.* 588, §§ 54, 55.) The policy of the legislature has always been to require compensation for detriment to a franchise. (*Laws of* 1832, *ch.* 256, § 27; 1833, *ch.* 294, § 17; 1836, *ch.* 262, §§ 13 *and* 14; *Id. ch.* 343, § 7; *Id. ch.* 292, § 7; *Id. ch.* 269, §§ 21, 22; *Laws of* 1847, *ch.* 166, § 4.) In regard to this very bridge company the legislature has indicated the same rule, (*Laws of* 1836, *ch.* 250,) which provides pre-payment by the city, when the bridge shall be needed by the public, (*Laws of* 1849, *ch.* 311, § 6.) This court has decided that detriment to a franchise is a subject of compensation. (*Flatbush Avenue,* 1 *Barb. S. C. Rep.* 286. *Seneca Road Co.* v. *Auburn and Rochester Railroad Co.,* 5 *Hill,* 175.)

The case of *Charles River Bridge Co.,* (11 *Peters,* 240,) does not apply. We need not contend, against that case, that the legislature in granting a parallel road destroying our franchise, thereby violate the provision of the constitution of the United States which forbids the passage of laws impairing contracts. (3 *Kent's Com.* 459, *note a, 5th ed. commenting on that case.*) That case does not interfere with the rule of our constitution as to compensation for private property taken for public use. The statute, too, under which the present proceeding is had, provides for compensation. The *Charles River Bridge* case has never been adopted in this state, and if it conflicts with the law of this state it must yield. (*Stalker* v. *McDonald,* 6 *Hill,* 93. *Luther* v. *Borden,* 7 *Howard,* 1, *and cases cited.*) The franchise of this company is "property," taken for public use, (3 *Kent,* 459, *note a; Flatbush Avenue,* 1 *Barb. S. C. R.* 286; *West River Bridge* v. *Dix,* 6 *Howard,* 507,) and is entitled to award, and subject to assessment, like other property. (*Enfield Toll Bridge Co.* v. *Hartford and N. H. Railroad Co.,* 17 *Conn. R.* 454; *S. P., Mills* v. *Co. St. Clair,* 2 *Gillman,* 197. *James River Co.* v. *Thomson,* 3 *Grattan,* 270.) The commissioners assume that

Matter of Hamilton Avenue, Brooklyn.

our franchise is to be destroyed, otherwise they should not have assessed our causeway at all. (*Owners, &c.* v. *Mayor of Albany,* 15 *Wend.* 374.) The damage sustained is none the less because it is *consequential.* (*Pennsylvania Railroad Co.* v. *Heister,* 8 *Barr,* 445.) A franchise can only be destroyed consequentially. It is intangible, and cannot even by a statute abrogating it be otherwise than consequentially affected. If consequential damage is not a subject for award, why should consequential benefit be a subject for assessment? The avenue to be constructed here is but a few hundred yards in length, but lands several miles distant are assessed for consequential benefit. The act itself (*Laws of* 1833, *ch,* 319, § 2) contemplates consequential damages, and directs assessment and award to owners, &c. affected by the improvement. The English courts expressly hold the rule of compensation for consequential damage. (*Queen* v. *Eastern Counties Railway Co.,* 2 *Railway Cases,* 736, 749. *Bele* v. *Hull Railway Co.,* 6 *M. & W.* 609. *East and West India Co.* v. *Gattke,* 3 *Eng. Com. Law and Eq. Rep.* 59; *S. C.,* 15 *Jurist,* 261.) These cases allow for consequential damage where property was "not taken or directly interfered with." Here our exclusive right is taken—is directly interfered with. It is an abuse of language to say that the entire destruction of the value of the franchise is not an annihilation of the franchise itself.

This is not a case of *damnum absque injuria.* If an innkeeper or shopkeeper is injured by the establishment of a rival inn or shop, that is *damnum absque injuria* because he has no right to an exclusive trade, but our franchise is an exclusive right. (*Ut supra.*) The legislature has taken away our right of action for the injury done to us by the city's building a new bridge and road, but it has taken it away only on the condition that our damages shall be paid.

*W. A. Green,* opposed. I. After the commissioners have given notice to the parties that they will meet and hear objections and review their report, they may proceed to modify and amend it at their discretion, and they need not give further no-

tice or hearing to the parties, after thus finally amending it. There must be a stopping place somewhere as to notices and hearing, from the very nature of the case. (*William and Anthony-streets*, 19 *Wend.* 678; *and John and Cherry-streets, Id.* 659. *Pearl-street, Id.* 651.) II. The franchise is merely the right to take tolls, and that right is not denied by this improvement. The charter of this company does not prohibit the establishment of a parallel bridge road. The charter was granted in 1833, and at the same session of the legislature the act was passed authorizing commissioners to lay out streets and avenues, and the proposed improvement is one of those avenues. The two acts must be taken together, and the charter is qualified by the street act. The legislature, where it intends to shelter a franchise from such detriment as this will sustain, makes provision to that effect in the charter. Such is the case in many charters which could be cited, and which contain express prohibitions as to rival works. The commissioners have no right, under the act, to make an award for damage to a franchise. They can do so only for damage to lands and buildings. In allowing for the portion of the bridge actually taken away by this improvement, they have gone to the extent of their power. If the company have a right to compensation for the value of their franchise, they must look elsewhere for it. The city must pay it. The law as to rights under franchises does not warrant the claim of the company in this case. (*Cayuga Bridge Co.* v. *Magee*, 6 *Wend.* 85; *S. C.*, 2 *Paige*, 116. *Mohawk Bridge Co.* v. *Utica and Schenectady Railroad*, 6 *Id.* 554. *Newburgh Turnpike* v. *Miller*, 5 *John. Ch.* 101.)

S. B. STRONG, J. The mayor and common council of the city of Brooklyn have presented the report of the commissioners of estimate and assessment in the matter of the proposed opening of Hamilton avenue, and applied for its confirmation. The application is resisted by the Brooklyn and Gowanus Toll Bridge Company, on the grounds: first, that no compensation has been allowed to them for the injury to their franchise which would be effected by the contemplated improvement; and secondly,

Matter of Hamilton Avenue, Brooklyn.

that the commissioners, in reviewing their estimate and assessment, increased the proportion of the expense of the improvement to be borne by the company, although no objection had been made to the award stated in the report which had been previously completed and filed. The facts which constitute the grounds of opposition above specified, were admitted on the argument by the counsel for the city, and the other grounds of objection set forth in the statement annexed to the notice of appeal, were passed over by the counsel for the bridge company in such a manner as to relieve me from the necessity of considering them; and it is due to both of those gentlemen to say, that they discussed the important questions involved in this controversy with all the candor which distinguishes the most enlightened members of their profession.

The appellants, in support of their first objection, rely upon the well known provision in our state constitution, that private *property* shall not be *taken* for public use without just compensation. Their franchise is undoubtedly private property, within the meaning of the constitutional enactment; and if that is to be taken for the proposed improvement, and the statute under which the commissioners acted authorized them to make an allowance for it, they should have awarded a compensation for the anticipated loss, and their report should be returned to them, to enable them to amend it accordingly. An important question then is, will the proposed improvement, if consummated, *take away* the franchise or any part of it? A franchise is taken when the party to whom it has belonged is deprived of the power or means of exercising it; but it is not taken when its emoluments are diminished by an improvement which does not destroy or impair such power or means; such a diminution is of course a damage, and may or may not constitute a valid cause of action; but it does not bring the case within the constitutional prohibition. I ground the distinction upon the palpable meaning of its language. The philological interpretations of the verb "to take," are very numerous, but none of them indicate that an indirect reduction of the profits of a thing constitute a seizure of it, so long as its substance, whether physical or moral, remains

intact. The damage from a loss of profits may be equally great, whether it results from a deprivation of their substantial emoluments, or from other and indirect causes, but the remedies may be different, and in many cases where the means are indirect the law gives no redress.

The means by which the bridge company exercise their franchise are, their bridge, toll house and other works to the said bridge "belonging." None of them are to be taken for the new avenue, except a part of the causeway, for which the commissioners have confessedly awarded a sufficient remuneration. Their rights or powers are, to continue their bridge and other works, to have the passage which they afford unobstructed, and to receive toll from those who use it. Clearly none of those rights are taken, or their power of exercising them impaired. What then is to be *taken* from them by the contemplated improvement? Nothing which has a present existence physically or morally. Their apprehended damage is a diminution of their tolls from a diversion of the travel from their bridge to the new avenue. Is this a grievance for which they are entitled to the redress which they demand? The privilege of establishing a toll bridge implies a right to receive a compensation from all who require the convenience which it furnishes in its immediate vicinity, except those who have another lawful passway. Any unauthorized diversion of the travel is an invasion of the right, for which the bridge owners would be entitled to redress. Should any one attempt to establish a contiguous bridge, without legislative authority, he might and ought to be restrained from doing so by an injunction. If the right is exclusive, it is not competent for the legislature to create a rival establishment within the prescribed limits. A grant may be exclusive when it is expressly declared to be so, or where some general term is used which comprehends the entire privilege. In the act incorporating the appellants, there is no express declaration that the right conferred shall be exclusive; nor is there any donation of the entire privilege of bridging Gowanus creek. The authority conferred was but to construct one bridge, and it cannot be supposed that the legislature intended that there should be no other

Matter of Hamilton Avenue, Brooklyn.

over a stream of considerable extent, and passing through a region of country soon to become a part of a crowded city. Chancellor Kent says (3 *Kent's Com.* 459, 3*d ed.*) that the creation of a rival franchise (when the first grant is not of an exclusive right) by the legislature, would be in violation of the original grant. Whether it be a violation of the grant or not, must depend upon circumstances. If the sole object of the second grant is to promote individual interests, or if it is not called for by the public wants, it would be unjustifiable, and ought not to be made. But it is otherwise where the public good calls for new grants. Then it is right that they should be made, although they may rival pre-existing establishments under legislative authority. Otherwise, a monopoly might seriously impede public improvement, and thus prove a great detriment, rather than a benefit, to the community. In the case under consideration, the grant of a bridge would prevent the laying out of streets leading across the creek, and thus obstruct, if not prevent, the settlement of that part of the city. There can be no doubt as to the power of the legislature to authorize the opening of Hamilton avenue; although to open it may diminish the profits of the bridge company. Legislative power is limited in cases of this description by the provision in the constitution of the United States, prohibiting the passage of any state law impairing the obligation of contracts, and the provision in our state constitution against taking private property without compensation, which I have before quoted. The decision of the supreme court of the United States in the case of *The Charles River Bridge*, (11 *Peters*, 420,) fully establishes the doctrine, that a state law creating a franchise which may rival and diminish the profits of a pre-existing one, established under a prior law, which does not grant an exclusive privilege, does not violate the obligation of any contract. So, too, it has been decided by the court of dernier resort in this state, (*Lansing* v. *Smith*, 4 *Wend.* 3,) that the grant of a wharf, under an act of the legislature, which conveys a franchise, does not impair the power of the legislature to make a second grant to construct a wharf in the same vicinity, which shall essentially diminish the profits and impair the privileges of the

prior one ; and that the loss sustained by the proprietor of the wharf first constructed in such cases is *damnum absque injuria*, for which no action lies. It is understood that a decision to the same effect has been made by the court of appeals in the case of *Gould* v. *The Hudson River Railroad Company*, which has not been reported. If, as these cases decide, the legislature can lawfully create a franchise which, whilst it neither takes away the power or means of exercising an existing one, may divert its business and diminish its profits, the donee of such new franchise has a right to take it and receive its emoluments. For the exercise of it he cannot be made accountable to any one. His is like the case of one who erects upon his own land a new establishment near a pre-existing one of the same description. However much the new may divert the business and diminish the profits of the old establishment, its proprietor has no remedy for the loss. It is right that every man should have the liberty to use his own property as he pleases, so long as he abstains from invading the privileges of another. The public gains by competition, and if individuals suffer, it is in consequence of a risk which all proprietors and patentees encounter, of the establishment of works of a public character, and they should make their calculations as to the prospective value of proposed new institutions accordingly.

There may be and undoubtedly are instances where it may be proper for the legislature, in creating a new franchise, to direct the grantee to make compensation to the proprietors of another for the consequent loss. The public good may require that one who embarks in an enterprise which, while it will be productive of benefit to the community, may be of doubtful expediency to the proprietor, should have a reasonable expectation of indemnity against loss from some new and rival establishment. Justice may require that when the public has gained by the enterprise of an individual, it should not unnecessarily divert from him his appropriate benefits. It is for these reasons, and not from any legal obligation, (for there is none,) that the legislature has directed compensation to be made to the proprietors of an existing franchise in the cases cited on the argument by the counsel for

the bridge company. There are, however, numerous instances where no such provision has been made; and taking the whole together, it is evident that giving or withholding such compensation is a question of expediency and propriety, and not of power.

In the case under consideration, however, no new or rival franchise has been created or authorized. Hamilton avenue is to be a public street; no toll or fare is to be received, nor is it to be for the sole benefit of any individual or corporation. In such cases the compensation is due, or can with propriety be made, for such damage as may result from the improvement, when private property is not taken. If, however, the construction of the avenue would violate the rights of the appellants, and they were consequently entitled to compensation, it would not, I think, be competent for the commissioners to award it in these proceedings. They have no powers except those conferred by the statute. The first section provides, that the "commissioners are to be appointed to estimate and assess the expenses of the improvement, and the amount of damages and benefits to be sustained and derived therefrom by the owners of such lands or buildings as may be effected thereby." This provision was designed to give an indemnity to the *owners* of such lands and buildings or of some special interest in them. If the proprietor of land or a building possesses a franchise which can be exercised only upon his land or his building, it is an element of his property, and he cannot be indemnified except by an allowance of its full value; or if it can be exercised elsewhere, then his damage consists in the expense and loss of the change caused by taking his house or building, and for that he should be compensated. A *just* compensation cannot be less than the actual loss, which the owner of the property taken has sustained. The provision of the act which I have last quoted, speaks of the damages and benefits of and to the owners of the land and buildings which may be *affected* by the improvement. This has reference only to such damages and benefits as the commissioners can direct should be received or paid, as any further investigation would be wholly nugatory. Those damages and benefits are specified

in the second section. In that, it is provided that the commissioners " shall make the estimate and assessments in the form of a report which shall contain an estimate of the expense of the proposed improvement, a brief description of the premises necessary to be *taken* for the purposes thereof, and of any residue of lots or pieces of land of which only a *part* will be *required* for the same, *and also of such premises as will be benefited thereby, but of which no part will be required for the said improvement*, with the names of the persons interested in the said premises, a statement of their respective interests, and an estimate of the damages, and an assessment of the benefit which will be sustained and derived by them respectively from such improvement, and the proportion of the expense of the said improvement which each ought to bear." In this the commissioners are confined in their action to the premises (by which I understand lands or buildings) to be taken or partly taken, and to such premises as will be *benefited*, but of which no part will be taken, but they have no authority to include lands or premises not taken wholly or in part, where their owners may be injured by the improvement. The sixth section authorizes them to estimate the damages of the owners of land bordering on a highway who may be excluded from it by the proposed change, but the act does not invest them with any authority to go any further. Where, then, the proposed street or avenue does not take any part of the site of a bridge, the damage of the proprietors, if any, cannot be included in the estimate, or awarded. The third section gives a discretionary power to the commissioners, where a part of a lot or lots is taken, to include the whole or a part of the residue in their report, with the consent of the owner or owners, and to estimate separately the value thereof; but the provision is evidently inapplicable to roads or bridges of any considerable extent; and if it would include either, the commissioners would have had some discretion in the matter, and it would have been an improper exercise of it to have included a long bridge and causeway because it was necessary to take a small part of the causeway, and where too that would not create any physical obstacle to the travel over the

bridge. The commissioners could not go beyond the part of the premises belonging to the appellants, which would be included in the proposed avenue. If, in taking that for the purpose designed, there would be any serious hindrance or obstruction to the travel over or to the bridge, that should have been included in the damages awarded to the company. There is nothing in the papers submitted to me, to show that the proposed avenue would throw any physical obstacles in the way of crossing the bridge, or that the appropriation of the part of the causeway, which is required for the avenue, would of itself diminish the travel over the bridge.

Upon the whole, I think the commissioners were right in not including in their estimate the damages which the appellants may sustain by the anticipated diversion of travel, by means of and through the proposed avenue. I am satisfied, however, that they erred in increasing the amount to be paid by the appellants for benefits, on reviewing the original report. The authority to review the report, and to correct the same when they shall deem it proper, although, in general terms, must be controlled by the obvious intent of the legislature, as expressed in the entire provision on this subject. They are required to file their report in the office of the clerk of the county, and to publish ten days' notice of the time and place, when and where they are to meet and review it. During the intervening time all persons interested may examine the report, and at the time and place designated in the notice, offer any objections which they may have, and accompany the same with affidavits. If any one is satisfied, he neither offers any objection nor presents any affidavit. If, on reviewing their report, the commissioners increase the charge imposed upon any one, to which no objection has been made, he has no subsequent opportunity to oppose the additional imposition, or to furnish affidavits to resist it, before them. He may, it is true, appeal to the judge to whom the altered report is presented for confirmation, but then he can present no affidavits to show that the additional burthen was improperly imposed; nor can he read any affidavits or papers in opposition to the report, except such as were served upon the commission-

ers, and none would be served upon them by a party who was satisfied with their first report. If, then, the commisers had authority to increase a charge upon any one in a case where no objection has been made, he might be entirely deprived of the opportunity which the law affords to any one of making his defense. The statute should not receive a construction which would create so much injustice

I am clear that the power to review, conferred upon the commissioners, is simply appellate, and that they should be confined in its exercise to the charges to which objections have been made, and to such alterations as the changes which they might deem it proper to make in those charges might require. The commissioners are therefore directed to reduce the charges against the appellants, for benefits which they are to pay, to the amount originally assessed, and should they do so in the presence of this court, or during the present term, their report thus altered will be confirmed; otherwise it must go back to them for revision.

[KINGS SPECIAL TERM, November 1, 1852.   S. B. Strong, Justice.]