THE MORRIS CANAL AND BANKING COMPANY *vs.* PETER TOWNSEND and W. H. TOWNSEND.

The legislature may, without violating the constitution, pass an act authorizing a foreign corporation to take lands, in this state, belonging to its citizens, and appropriate the same to its own use for the purpose of constructing a public improvement, on paying a just compensation to the owners.

Accordingly *held*, that the act of April 11, 1855, authorizing the supreme court to appoint commissioners to ascertain and determine the compensation which ought justly to be paid by the Morris Canal and Banking Company, a corporation chartered by the legislature of New Jersey, to the owners of lands in this state taken by such corporation, or injured by them, in constructing a reservoir for their canal, was a valid and binding act; and that it was the duty of the court to appoint appraisers, upon a proper application by the corporation.

Whether the citizens of this state will be benefited by the construction of a public work by a foreign corporation is for the legislature to judge. To that department, and not to the judiciary, the constitution confides the right to determine that question.

It is also for the legislature, exclusively, to determine as to the extent of the interest in the lands, to be acquired by the company. The right to take property to any extent, whether the full or entire title, or only an easement, is implied in the constitutional provision.

The term "property," in the constitution, includes a right of action for injuries to land proposed to be taken for a public purpose; so that it may be included in an assessment, by commissioners, of the value of the land, without a violation of the right to a trial by jury.

APPEAL by Peter Townsend and Wm. H. Townsend from an order made at a special term, appointing commissioners to appraise the damages of the appellants, as owners of land required by the Morris Canal and Banking Company, for the purpose of a reservoir for their canal. In opposition to the petition of the canal company, Peter Townsend presented an affidavit, stating that he was the person named in the petition as the owner of lands in the said county of Orange, proposed to be taken under the act of April 11, 1855. That the canal of the Morris Canal and Banking Company lies wholly and exclusively within the state of New Jersey, as does also the dam referred to in the said act and petition, and no part thereof lies within the state of New York. That the said dam was in existence for several years prior to the passage of the said act of

Morris Canal and Banking Company *v.* Townsend.

April 11, 1855, and the lands of the deponent flowed by means thereof, and that the deponent had, as he was advised and believed, a valid and subsisting claim for damages against the said Morris Canal and Banking Company, to a large amount, at the time of the passage of that act, over and above any claim for damages for which a suit had been commenced previous to the passage of that act.

*T. McKissock* and *J. Larocque,* for the appellants. I. The act of April 11, 1855, under which this proceeding is taken, is unconstitutional and void, because it is a delegation of the right of eminent domain vested in the state, to a foreign corporation located in another state, and subject to no power of visitation or control on the part of the legislature of our own state. There is no precedent of such an act for the benefit of a foreign corporation, and in regard to a work located wholly within another state. (*Const. art.* 10, § 2. *Swan* v. *Williams,* 2 *Mich. Rep.* (*Gibbs*) 427. *Laws of* 1855, *p.* 506.)

II. The act in question is also unconstitutional and void, because the supplying of water for the use of a canal lying exclusively within another state is not a public use, within the meaning of the provision of the constitution on that subject. (1.) No use is public, within the meaning of our constitution, which is not a use for the benefit of this state or of its citizens. (*Const. art.* 1, §§ 6, 7. *Amendts. to Const. U. S. art.* 5.) (2.) There is nothing before the court to show that citizens of New York have any right to use the canal in New Jersey; that the canal company are common carriers, or that the citizens of the state of New York derive any benefit whatever from its existence. (3.) If the facts were so, and if that would help the petitioners, the burthen would be on them to show them. They are not facts of which the court could take judicial notice. (4.) But such a remote, contingent and precarious benefit would not constitute a public use justifying the taking of private property, subject, as it would be, to be taken away, fettered or impeded, at the will of the legislature of another state or of a private corporation. (5.) A public use to facilitate communications be-

tween the states of New Jersey and New York, might justify the taking of private property in either state, by authority of congress, under their power to regulate commerce, but not the taking of private property in either state, under the authority of its legislature, for the use of a work located wholly within the other. (*Taylor* v. *Porter*, 4 *Hill*, 140. *Matter of Albany street*, 11 *Wend.* 149. *Bloodgood* v. *Mohawk and Hudson R. R. Co.*, 18 *id.* 10. *Matter of John and Cherry streets*, 19 *id.* 659. *Varick* v. *Smith*, 5 *Paige*, 137. *Wilkeson* v. *Leland*, 2 *Peters*, 657. 2 *Kent's Com.* 339, 340 *and notes. Beekman* v. *Saratoga and S. R. R. Co.*, 3 *Paige*, 45.)

III. The act is also unconstitutional and void, because it purports to authorize the assessment of damages which have been sustained by the owner prior to its passage. The language of the act is, that the commissioners may ascertain the compensation which ought to be made " for the injury which *may have been*, or shall be, occasioned thereto." (§ 5.) And the language in section 1 is to the same effect, providing for an inability to agree with the owner of any real estate in this state which has been, or may be, injuriously affected. (1.) The petition shows that the canal and dam are already existing works. (2.) For every day that the land adjoining the lake has been flowed by their means, the owner had a vested claim for damages against the company, and a right to bring an action, and have his damages assessed by a jury. The provision in the new constitution authorizing an appraisement, by a jury or commissioners, does not reach the case of past damages.

IV. The clause in the 7th section of the act in question, providing that "all real estate and all rights therein acquired by the company, under and pursuant to the provisions of this act, for the purposes of its incorporation, shall be deemed to be acquired for public use," does not help the case. The legislature could not, by so declaring, make a public use out of what was not such, without that declaration. The clause in question, on the contrary, indicates an intention to evade the restraint of the constitution.

V. In the same manner the provision, that in the case of a

second report by the commissioners, "it shall be final and con-
clusive on all the parties," indicates an effort to deprive the
parties interested of their right to appeal.

VI. The intent to invade the restraint of the constitution is
further indicated by the provision, that after assessment of the
damages by the commissioners, and their payment or tender even
notwithstanding, and in case of such appeal as the act *does* au-
thorize, "such appeal shall not affect the possession, by such
company, of the lands appraised; and when the same is made
by others than the company, it shall not be heard, except on a
stipulation of the party appealing not to disturb such posses-
sion." (*Last clause of* § 7.)

VII. The act is also unconstitutional and void, because it
allows the company to acquire title to the lands themselves.
This was more than was necessary for the exercise of the right to
flow them, and the legislature have no right to take either
any more land, or any greater estate or interest in land, than
is requisite for the use intended. (*Cases above cited, par-
ticularly the Matter of Albany street,* 11 *Wend.* 149 ; *Em-
bury* v. *Conner,* 2 *Sand. S. C. R.* 98 ; 19 *Wend.* 659.)

VIII. The court, in this proceeding, acts judicially as a
court, and not ministerially, by virtue of the special authority
conferred by the act. The proper time and place to object
to the constitutionality of the act was, therefore, on the pre-
senting of the petition, as the proceedings could not be
reviewed by *certiorari,* and the only mode of review is by
appeal from the order. (*In the matter of Walker street, Court
of Appeals. See Striker* v. *Kelly,* 2 *Denio,* 323 ; *Laws of*
1854, *p.* 592.)

IX. The order of the supreme court appealed from is there-
fore erroneous, and should be reversed, with costs.

*J. M. Van Cott* and *D. F. Gedney,* for the respondents.
I. By the constitution of the state of New York, private prop-
erty may be taken for public use, by paying a just compensa-
tion. (*Const. art.* 1, § 6.) The legislature may, therefore,

pass laws authorizing the taking of private property in all cases prescribed by the constitution.

II. The act of the legislature under which the respondents seek to acquire a right to overflow the appellants' lands, does not, in form, violate any provision of the constitution; and if this right was sought to be acquired for public use, the act is constitutional. (*Laws of N. Y.* 1855, *ch.* 296. 13 *Peters' Rep.* 519, 584.)

III. The right sought to be acquired under the act, was for public use, because, (1st.) The legislature, the sovereign power, recognizes the existence of the Morris Canal and Banking Company as a corporation of the state of New Jersey, for whose benefit, as a corporation, the right was to be acquired. (*Sec.* 1 *of the act.*) (2d.) The legislature has declared, that any real estate, or rights therein acquired in pursuance of the act, shall be deemed to be acquired for public use. (*Sec.* 7 *of the act.*) (3d.) The right was not sought to be acquired by individuals for private use, but by a corporation, duly recognized by the sovereign power of the state, as necessary to the operation of a canal of manifest public utility.

IV. The *degree* of benefit to the public is not a material question. The benefit may be indirect as well as direct. The purpose of acquiring the right mentioned in the petition was public; and if the purpose be public, the court cannot inquire into the expediency or propriety of the use. (*Harris* v. *Thompson*, 9 *Barb.* 350. 2 *Kent's Com.* 340 *and note.* *Beekman* v. *Saratoga R. R. Co.*, 3 *Paige*, 73. 5 *id.* 159, 160. *Laws of* 1849, *p.* 547.)

V. The right of eminent domain implies the right in the sovereign power to determine the time and *occasion*, and as to what particular property it may be exercised. (*Heyward* v. *Mayor of New York*, 3 *Selden*, 325.)

VI. The court will not declare an act of the legislature unconstitutional, unless a case be presented in which there is no reasonable doubt. (*Ex parte McCollum*, 1 *Cowen*, 550.)

Morris Canal and Banking Company *v.* Townsend.

*By the Court,* S. B. STRONG, P. J. The plaintiffs are authorized by the statutes of the state of New Jersey to construct their canal to the line of this state bounding the county of Orange. They found it necessary, or at any rate convenient, for their operations, to construct a dam across the outlet of Long pond or Greenwood lake, which created a reservoir extending into, and crossing some of the lands of, that county. The legislature of this state, by an act passed on the 11th of April, 1855, (*ch.* 296,) authorized this court to appoint commissioners to ascertain and determine the compensation which ought justly to be made to the owners of the lands, for the taking of their real estate, in case the same should be taken, or for the injury which might have been or should be occasioned thereto by such reservoir, and provided that in the action and determination of the commissioners and the payment, tender or deposit of the compensation awarded by them, the said company should be vested with the title to the real estate taken, and all persons made parties to the proceedings should be divested and barred of all right in the lands taken, during the corporate existence of the company, and from all claim or demand on account of injury or damage to the real estate injuriously affected. Some of the lands to be taken or injuriously affected by establishing or continuing the reservoir, belong to the defendants. The company allege that they have offered to pay to these owners a reasonable compensation for their land, and damages, which such owners have refused to accept, and therefore the company have applied to this court for the appointment of commissioners to ascertain and determine the compensation to be made to the defendants for their lands and damages. This court, at special term, made an order for the appointment of such commissioners; from which the defendants have appealed. And they now contend that the order should be vacated and annulled, on the assumption that the act of our legislature is unconstitutional and void.

It is contended that our legislature cannot authorize a foreign corporation, located in another state, and subject to no power of visitation or control on the part of our functionaries, to

take the lands in this state belonging to its citizens. There is certainly nothing in our constitution thus restricting the power of exercising the right of eminent domain. The objection must be urged on the allegation of incompatibility. But incompatibility with what? Certainly not with our ordinary practice. We have recognized the existence of foreign corporations in various ways, and granted to them many privileges, in this state. We have laws to prevent the forgery of the bills of foreign banks. We authorize foreign insurance companies to transact business in this state. Foreign corporations may institute, maintain and defend suits, in our state courts, and they do so. And we have authorized a rail road company of another state—the New York and New Haven Rail Road Company—to extend their road into this state, and to acquire (compulsorily if need be) the title to, or the right to use, the lands of our citizens in the county of Westchester. So far as I have heard, none of the acts conferring such privileges, powers and rights have been deemed incompatible with our institutions, or the rights of our citizens, and therefore void. It might have been well, in the present instance, to have imposed some conditions which would have enabled our state legislature to control (of course indirectly) the general operations of the company, so as effectually to protect the interests of the people of this state. That was not done, probably from confidence in the good intentions of the directors, and a consciousness that it would be for their advantage to promote the welfare of all whose interests or necessities might prompt them to use the canal. We have not, of course, parted with the right to legislate as to the use of that part of the property of the company which shall be within our own borders. That, the legislature has not yielded. and could not, without despotism, yield to another state. In legislating as to the right to take private property for public purposes, it would not vitiate the law even if it should be remiss in providing fully for the interests of the people.. If such considerations should be allowed to defeat our statutes, I am apprehensive that many of them would fail.

It is objected that the operations of a corporation in another

Morris Canal and Banking Company *v.* Townsend.

state, and conducted principally by inhabitants of that state, cannot be promotive of public good to our citizens, so as to authorize the assumption of their lands. But why not? A canal generally improves a country through its whole extent—quite as much at its terminus, though more remote from a market, as at any other point. We can easily see that it may benefit our people near the state line where it terminates. That is enough to feed the power, and to show that it has not been exercised under an illusory pretense. Whether our public will be essentially benefited was for our legislature to judge. The constitution confides the right to judge in that matter to that department, and not to the judiciary. In the case of *Heyward* v. *The Mayor of New York*, (3 *Seld.* 325,) Welles, J. in giving the opinion of the court, says, "Does it" (the right of eminent domain) "imply the right in the sovereign power to determine the time and occasion, and as to what particular property, it may be exercised? Most clearly it does, from the very essence and nature of the right. To deny it would be to abrogate and destroy it."

As to the extent of the interest in the lands to be acquired by the company, that was exclusively for the consideration of the legislature. The right to take property to any extent, whether the full or entire title, or only an easement, is implied in the constitutional provision.

It was made a question, on the argument, whether the term "property" in the constitutional provision, includes a right of action for injuries to land proposed to be taken, so that it could be included in the assessment of the commissioners without a violation of the right to a trial by a jury. I am inclined to think that in this case the trespasses upon the land are so directly connected with the main subject and with the now sanctioned act of taking it, that they may be included. It is a close question, I admit. But it cannot affect the main question, as to the right to acquire the land. That cannot be obtained, under the act in question, without a full compensation to the owners, for their present loss. And if they are also to receive a compensation for antecedent injuries without depriving them

of their right of action, (by reason of an excess in the exercise of a constitutional power,) they cannot be injured.

I think that none of the objections are well taken, and that the order should be affirmed, with $10 costs.

[ORANGE GENERAL TERM, July 14, 1857. *S. B. Strong, Birdseye* and *Emott,* Justices.]