THOMAS J. McCAHILL, PLAINTIFF, *v.* GEORGE J. HAM-ILTON, DEFENDANT.

*Chapter 545 of 1875 — does not operate retrospectively.*

Chapter 545 of 1875, amending the Revised Statutes by providing that, "where an estate has been conveyed to trustees for the benefit of creditors, and no different limitation is contained in the instrument creating the trust, such trust shall be deemed discharged at the end of twenty-five years from the creation of the same; and the estate conveyed to trustee or trustees, and not granted or conveyed by him or them shall revert to the grantor or grantors, his or their heirs or devisees or persons claiming under them, to the same effect as though such trust had not been created," does not operate retrospectively, but only applies to estates conveyed to trustees for the benefit of creditors after its passage.

CONTROVERSY submitted upon an agreed statement of facts under section 1279 of the Code of Civil Procedure.

The plaintiff and defendant on the 21st day of September, 1879, entered into a contract under their hands and seals, by which the plaintiff agreed to sell, and the defendant agreed to purchase certain premises in New York, which contract the defendant subsequently refused to complete on the ground that the title was imperfect.

Charles H. Hall was, on the 8th day of November, 1839, the owner in fee of the premises in question and of other premises, and on that day he executed and delivered to Charles M. Hall and David P. Hall a conveyance thereof in trust for the benefit of his creditors, which was recorded in the office of the register of deeds, in and for the city and county of New York, in liber 402 of conveyances, page 212, the 22d day of November, 1839.

The said Charles M. Hall and David P. Hall, the grantees or assignees of said premises, accepted the said trusts, and proceeded with the execution thereof, and under the power of sale therein contained sold and conveyed some of the real estate conveyed by the said trust deed; but no part of the premises in question was sold or conveyed by the said trustees.

Charles H. Hall died intestate, on the 8th day of January, 1852, leaving two children, his sole heirs-at-law, viz. : Eliza A. H. Sayre, wife of Dr. Lewis A. Sayre, and Mary Jane Hall, and leaving his wife, Sarah, who has since died.

One George Crookshank, on the 18th day of June, 1851, recovered a judgment in the New York Supreme Court against Charles H. Hall for the sum of $31,016.98 ; an execution was issued under the said judgment by which a sale was made on the 4th day of June, 1870, of the right, title and interest which the said Charles H. Hall had in said premises in question on the 18th day of June, 1851, or any time afterwards, at which sale Joshua C. Saunders became the purchaser for the sum of $2,500, that being the highest sum bidden, and he being the highest bidder. The sheriff's certificate of sale was filed in the office of the clerk of the county of New York on the 4th day of June, 1870. Joshua C. Saunders, the purchaser, assigned the certificate of sale to Phineas C. Kingsland, by assignment dated 12th October, 1870, and James O'Brien (late), sheriff of the city and county of New York, by deed reciting the judgment, execution, assignment

and sale, conveyed the said premises to Phineas C. Kingsland, by deed dated September 5, 1871, and recorded in said register's office, in liber 1207 of conveyances, page 30, November 27, 1871.

Eliza A. H. Sayre, and her husband, and Mary Jane Hall, on the 1st day of June, 1870, sold and by deed of that date conveyed, for the consideration of $2,000, the premises in question to Jane Warner, recorded in liber 1145 of conveyances, page 416, June 1, 1870; and the said Jane Warner sold and by deed dated November 10, 1870, conveyed for the consideration of $2,400, the said premises to said Phineas C. Kingsland, which deed was recorded in said office in liber 1145 of conveyances, page 416, June 1, 1870.

The title of the plaintiff to said premises is derived under a conveyance made by the said Phineas C. Kingsland and wife.

Charles M. Hall and David P. Hall, the assignees of Charles H. Hall, under the deed of trust, are both dead, without ever having conveyed the premises in question, or having, so far as appears, closed their trusts.

The questions to be determined between the parties were:

*First.* Whether the said Phineas C. Kingsland under the deed from the said sheriff, and under the conveyance by Eliza A. H. Sayre and Mary Jane Hall, the heirs-at-law of Charles H. Hall, obtained a good title to the premises in question divested of any claim of the assignees in trust, or their successors?

*Second.* Is the lapse of time since the execution and delivery of the deed in trust a sufficient bar (if pleaded) to the claim to be made on the said premises by the assignee in trust or their successors?

*Third.* Does the act (chap. 545 of 1875) discharge the trust, the same having been created more than twenty-five years, and the estate conveyed to the said trustees not having been granted or conveyed?

*Fourth.* Assuming all the facts above stated to be true, has the defendant any excuse in refusing to perform his contract?

*R. H. Bowne*, for the plaintiff.

*Geo. W. Zener*, for the defendant.

Barrett J. :

Hall's creditors had vested rights under tne trust deed of November, 1839, viz. : the right to the due execution of the trust for their benefit.

Of that right it is contended that they have been deprived by the act of 1875 (chap. 545), amending 1 Revised Statutes, page 730, section 67, so as to make it read as follows :

" When the purposes for which an express trust shall have been created shall have ceased, the estate of the trustees shall also cease, and where an estate has been conveyed to trustees for the benefit of creditors, and no different limitation is contained in the instrument creating the trust, such trust shall be deemed discharged at the end of twenty-five years from the creation of the same ; and the estate conveyed to trustee or trustees, and not granted or conveyed by him or them, shall revert to the grantor or grantors, his or their heirs or devisees, or persons claiming under them, to the same effect as though such trust had not been created."

It is well settled that a statute is not to be construed to operate retrospectively so as to take away a vested right, unless that intention is made manifest by express words. (*Dash* v. *Van Kleeck*, 7 Johns., 477; *Sayre* v. *Wisner*, 8 Wend., 661; *Wood* v. *Oakley*, 11 Paige, 400; *Butler* v. *Palmer*, 1 Hill, 324; *Johnson* v. *Burrell*, 2 id., 238; *Sanford* v. *Bennett*, 24 N. Y., 20.) Although the words are so general and broad as in their literal sense to comprehend existing cases, they must yet be construed as applicable only to such as may thereafter arise, unless the intention to embrace all is plainly and unequivocally expressed. (Duer, J., in *Berley* v. *Rampacher*, 5 Duer, 188.)

It was said by Savage, Ch. J., in *Sayre* v. *Wisner* (8 Wend., 661), that " a statute never ought to have such a construction as to divest a right previously acquired, if it be susceptible of any other, giving it a reasonable object and full operation without such a construction." The court there held that the provisions of the Revised Statutes, to the effect that " a widow shall demand her dower within twenty years after the death of her husband," *although a statute of limitations* were inapplicable where the husband died more than twenty years before the passage of the

act ; and for the reason that the right having thus vested, the statute would not be construed retrospectively to divest it.

*Gillmore* v. *Shooter* (2 Mod., 310) was cited and approved (as it had been in *Dash* v. *Van Kleeck*). That case was under the English statute of frauds, which enacted "that from and after the 24th day of June, 1677, *no action shall be brought* to charge any person upon any agreement made in consideration of marriage," etc., "unless such agreement be in writing," etc.

Yet an action *thereafter* upon a parol promise, made prior to the act, was sustained, the court ruling that the statute was limited to agreements made after the 24th of June, 1677.

In *Watkins* v. *Haight* (18 Johns., 138), an act limiting the bringing of certain writs of error to five years from the day when the judgment was rendered was held not to be retrospective.

So as to a provision that when "any street *shall have been* open to and used as such by the public for the period of five years, the same shall thereby become a street," etc. (*McMannis* v. *Butler*, 49 Barb., 181.) The case of *Amsbry* v. *Hinds* (48 N. Y., 61) is almost precisely in point. The clause there under consideration provided "that all highways that *have ceased* to be traveled or used as such for six years shall cease to be highways for any purpose." Yet the court held that this clause was not retroactive, LOTT, Ch. C., saying : " The words, '*have ceased* to be traveled and used,' do not, necessarily, relate to the past. It may and should be construed as declaring that all highways that have ceased to be traveled or used for six years (*after the passage of this act*) shall cease to be a highway for any purpose." (And see cases there cited, *Bailey* v. *Mayor*, 7 Hill, 146; *Bull* v. *Ketchum*, 2 Denio, 188; *People* v. *Supervisors*, 43 N. Y., 130.)

We think it quite clear under these authorities, as well as upon principle, that the act of 1875 should be construed as operating not otherwise than prospectively, that is "upon estates conveyed to trustees for the benefit of creditors " — to repeat the language of Mr. Commissioner LOTT, " *after the passage of the act.*"

If the act were intended to operate retroactively, then it is, in that respect, of doubtful constitutionality.

The instrument in question was in the nature of a contract. It was for the benefit of creditors, who were, at least, constructively,

parties to it. "A conveyance," said DENIO, J., in *Van Rensselaer* v. *Ball* (19 N. Y., 105), "I agree, is as fully within the constitutional provision as an executory contract ; " and see *Varick's Ex'rs* v. *Briggs* (22 Wend., 543), where the court of errors held that "deeds, valid and perfect at the time of their execution * * * are a complete and valid executed contract." The recording act, said VERPLANCK, senator, declaring "that *such* valid contracts shall be adjudged fraudulent and void as against certain persons, unless a further legal sanction be added, must be in direct hostility to the very words of the constitutional inhibition. The contracts themselves are impaired by being adjudged void."

It may be questionable, also, whether the creditors' "property" is not thus taken without due process of law. A wide and liberal interpretation, in the interests of the citizen, has been given to the word "property" in its constitutional connection. Thus, both vested and contingent remainders have been treated as such. (*Powers* v. *Bergen*, 2 Seld., 358.) So as to a franchise, e. g., the right to maintain a toll-bridge. (*The Matter of Hamilton Avenue*, 14 Barb., 405.) Even a right of action for injuries to land proposed to be taken for a public purpose has been treated as property within the meaning of the public use branch of the section. (*Morris Canal and Banking Co.* v. *Townsend*, 24 Barb., 658.) A legacy to the wife which vests in the husband at common law is his property, within the "due process" branch. (*Westervelt* v. *Gregg*, 2 Kern., 211.)

There SELDEN, J., says : "An immediate right of action for the recovery of money which when recovered is to belong to the party in whom the right of action exists, *subject to be defeated only by the contingency that a person in being may die before judgment* can be *obtained*, is a valuable pecuniary interest which deserves protection equally with rights which are absolute and unconditional."

It may be that the vested rights of these creditors are not "property," within the principle of these cases. That question need not now be determined. It is enough to show that upon the whole case presented the title is not free from suspicion, but is, to say the least, doubtful. (1 Sugden on V. and P., 505–512 [Lord's 11th ed.]; *Curtis* v. *Hitchcock*, 10 Paige, 399; see also, *Jordan* v. *Poillon*, Court of Appeals, opin. of MILLER, reported

in Daily Register of December 17, 1879; *Seymour* v. *De Lancey*, Hopk., 436.)

Nor should the defendant be required without evidence to accept the risk of sustaining a plea of the statute of limitations. *Non constat*, but some of these creditors may be able, by extrinsic facts of which he knows nothing, to take their cases out of the statute. A single suggestion, in conclusion, may not be out of place. It is difficult to perceive how this title can be entirely quieted save by the appointment of new trustees authorized to file a bill against the creditors, or their legal representatives and all other persons interested, for a final settlement and winding up of the trust. The creditors are not now before the court and would not, of course, be bound by any judgment we might make. (See *Jordan* v. *Poillon, ubi supra.*)

In such an action as is suggested they or their legal representatives could be proceeded against by personal service if resident, or by due publication if non-resident, and a judgment barring their claims and closing the trust would, in case of their non-appearance or failure to establish any right or interest, practically dispose of the present difficulties.

There must, however, be judgment on the case now before us for the defendant, but, under the circumstances, without costs.

DAVIS, P. J. :

I concur on the two grounds firstly and secondly discussed in the opinion of BARRETT, J.

BRADY, J. :

I concur in the result.

Judgment ordered for the defendant, without costs.