By the Court. Duer, J.
If the rule of the common law, ' by which the husband is made liable for all the debts of the wife, contracted by her before the marriage, rested solely upon the transfer to him, which the marriage effects, of all the personal property of the wife, there would be great force in the argument, that the act of 1848, by preventing his acquisition of the property of the wife, has discharged him from his liability for her debts. The case, might then, not unreasonably, be held to fall within the purview of the very sensible maxim, that “ cessante ratione, cessat etiam lex.” But it is manifest, upon a very slight consideration of the authorities, that' the acquisition, by the husband, of the property of the wife, is not the sole foundation of his common law liability for her debts, although it may justly be urged, as mitigating, in some degree, the severity of the rule. His liability, Íit is certain, is absolute and unlimited, without any reference whatever to the property whicb/he acquires, or to which he may become entitled. It exists, even when the wife, at the time of the marriage, has no property at allypresent or fixture, or when all that she then possesses, or to which she may become entitled, is settled to her sole and separate use. We cannot, therefore, say that the fact, or extent, of his liability, is at all affected by the provisions of the act of 1848. There is no more reason for saying, ■ that a settlement,- by a general law, of the property of the wife, to her separate use, can operate to discharge the husband from the payment of her debts, than a settlement of the same character, made by a husband or parent, before the marriage, by a devise or ante-nuptial contract. In both cases, the continued liability of the husband is entirely consistent with the legal effect of the settlement.
It is possible, and, perhaps, not improbable, that the legislature, in depriving the husband of that interest in the property of his wife, which the common law gave to him, meant to exonerate him from her debts, but we can deduce no such intention from the words, or the provisions, of the act of 1848; and it is needless to cite authorities, to show that it is only by express words, or by *187 a necessary implication, that a legislative enactment can operate, as a repeal or alteration of an established rule of the common law. That there are express words of repeal, in the act of 1848, is not pretended, and it is just as certain, that it contains no provisions from which the intention to repeal must necessarily be implied.We must, therefore, hold, that the defendant, Adolph, became a debtor to the plaintiff, when he intermarried with the defendant Margaret, and that he was such debtor when the act of 1853 was passed. Has that act discharged him from this liability ? The act provides, that an action may be maintained against husband and wife, jointly, for a debt of the wife, contracted before marriage, but that execution on any judgment in such action, shall only issue against, and the judgment shall only bind, the separate estate of the wife; and it is contended, that these provisions are clearly applicable to the case before us, and made it the duty of the Judge, at Special Term, to render the exact judgment that he has given, and which it is, therefore, our duty to affirm.
It is manifest, however, that we cannot so decide, without giving to the provisions of the act in question, a retrospective operation ; nor, without holding, that the act thus construed, was a valid exercise of legislative power. We can do neither.
If the words of the act are not to be limited to marriages thereafter to be contracted, but must be construed as applicable also to those before contracted, and then existing, it is certain, and is not denied, that they would be retroactive, in .their operation, upon preexisting debts, and rights of action; but, we apprehend, that we cannot give such a construction to the act, without a denial of principles that have long been settled, and from which, we trust, that no court of justice would willingly depart. The plaintiff, in the case before us, when the act of 1853 was passed, had a vested right of action against both the defendants. The husband, as well as the wife, was then his debtor, and the property and estate of the husband would have been bound by the judgment he was then entitled to obtain. If the defence that is relied on, is allowed to prevail, and the plaintiff is to be deprived of the judgment that he claims, it is clear, that the act of 1853 has not merely interfered with, but has taken away and annulled his vested rights. We hold, that we have no right to give such a construction to the act, unless it is forced upon us by the words that are used. We *188 have no right to adopt the construction, if there is any other more reasonable and just, of which the words are susceptible.
The leading, and much debated case of Dash v. Van Kleeck, qualified and explained by subsequent decisions, has established the rule, that no enactment, however positive in its terms, is to be construed as designed to interfere with existing contracts, rights of action, or suits, unless the intention, that it shall so operate, is expressly declared. Although the words of the statute are so general and broad, as in their literal extent; to comprehend existing cases, they must yet be construed as applicable only to such as may thereafter arise, unless the intention to embrace all, is plainly and unequivocally expressed. (Dash v. Van Kleeck, 7 John. 499; Butler v. Palmer, 1 Hill, 325; Johnson v. Burril, 2 Hill, 238; Wood v. Oakley, 11 Paige, 403; vide also as to the rule in England, Torrington v. Hargreave, 5 Bing. 489.) It cannot be denied, that the general words of the act of 1853, are susceptible of the construction for which the defendants contend, but there is no pretence for the assertion, that they contain a declaration, that this construction shall be given to them. The general rule, therefore, as to the construction of statutes, must control our decision, that the act in question was designed to operate prospectively and prospectively alone, and, consequently, that the legal rights of the plaintiff were not affected by its provisions.
But we shall not stop here. Had the act of 1853 declared in terms that its provisions should be construed to apply to existing debts, or were we bound to give that construction to its provisions, as they stand, we should then be constrained to hold, and would have no difficulty in holding, that the act, so far as sanctioning that construction, would be inoperative and void. Hot void, as repugnant to one of the' plainest rules of natural justice, but as repugnant to a vital provision, adopting and consecrating that rule, in the constitution of the state.
If the act of 1853 is to be construed, as releasing the defendant Adolph, from his personal liability as a debtor to the plaintiff, it is plain, that it would operate, in respect to the plaintiff, not as a limitation of his remedies as a creditor, but as the confiscation of a debt; of a debt which, as then due, he had an immediate right to recover; and, it seems to us equally clear, that the act, thus construed, would involve a direct violation of that provision in the *189 constitution which declares, that “ no person shall be deprived of life, liberty, or property, without due process of law.” Upon this question, we regard the decision of the Court of Appeals in the recent case of Westervelt v. Gregg, (2 Kernan, 202,) as a controlling authority, for, as we read that decision, it has settled the law, that an immediate right of action, for the recovery of a debt, is property, within the meaning and protection of the constitution. In delivering his judgment in that case, Mr. Justice Denio expressed himself as follows: “An immediate right of action, for the recovery of money, which, when recovered, is to belong to the party in whom the right of action exists, subject to be defeated only by the contingency that a person in being may die before a judgment can be obtained, is a valuable pecuniary interest, which deserves protection equally with rights, which are absolute and unconditional.” It was upon the truth of this proposition that the judgment of the Court of Appeals was founded, and it cannot be denied, that its terms embrace, just as certainly and as fully, the case before us, as that which was the subject of the decision.
For these reasons, all the Judges of this court—for, considering the importance of the question, we have felt it our duty to consult them all—concur in the opinion, that the judgment at Special Term, following the provisions of the act of 1853, was erroneous, and that the plaintiff is entitled to a judgment against both the* defendants, for the amount of the debt that their answers, in effect, admit to be due, together with interest and costs, according to the prayer of his complaint.
The judgment appealed from is, therefore, reversed, and as the questions involved arise upon the pleadings alone, and cannot be varied by a new trial, a final judgment for the plaintiff, such as has been stated, must now be entered.
Hoffman, J.
It is insisted that the plaintiff has a right to a judgment against the husband as well as the wife.
It is not denied that, but for the statutes of this state, he would have such a right. The common law made him responsible for the wife’s debts incurred dum sola, whether he received property with her, or not. Yet if he was not sued before her death, he was discharged, whatever amount he may have received. (2 Kent’s Com. 144.)
*190 In compensation for this liability, the common law gave the husband all the wife’s personal property, or the power to acquire it; and likewise gave him all her subsequent acquisitions, by her own labor, or from the gift of others, unless they were expressly guarded from him.
The act of 1848, (ch. 200, § 1,) provided, that the real and personal estate of any female who might thereafter marry, and which she should own at the time of the marriage, should not be subject to the disposal of the husband, nor liable for his debts, and should continue her sole and separate property, as if she were a single female.
The third section of the same act enabled the married woman to take by inheritance, or by gift, grant, devise, or bequest, real and personal property; and to hold the same to her sole and separate use, and to convey and devise the same as if she were Angle, and the same should not be subject to the disposal of the husband, nor liable for his debts.
The effect of this statute upon the relations of the husband and wife, in this case, was, that he had no right to the property she possessed, or was entitled to, in October, 1850; nor to any which might be given to his wife during the marriage.
It deserves notice, that in the second section of the act, is a provision as to the property of women married at its passage. It is declared that her property shall be her sole and separate estate, as if she were single, except so far as the same may be liable for the debts of her husband heretofore (before the date of the act) contracted.
This act and the amended act, passed in 1849, (ch. 876,) were silent as to the continuance of the husband’s common law responsibility for his wife’s debts.
But the statute of July 18, 1858, (ch. 576,) provided that an action may be maintained against the husband and wife jointly, for the debt of the wife, contracted before marriage; but the execution on any judgment in such action, shall issue against, and such judgment shall bind the separate estate and property of the wife only, and not that of the husband.
By the second section, any husband who might thereafter acquire the separate property of his wife, or any portion of it, by any ante-nuptial contract, or otherwise, should be liable for the *191 debts of Ms wife, contracted before marriage, to the extent only of the property so acquired, as if that act had not been passed.
The first question is, whether a case like this, of a debt and marriage contracted before the act, is covered by its language and fair import ? And I tMnk it is.
~ The language of the first section is without any qualification whatever. It may comprehend, and, grammatically, does comprehend, a case of the debt contracted before the act, as well as the marriage; a case of debt prior and marriage subsequent; or of both being subsequent.
The second section forms an exception to the first, and shows how the term husband is used in the first. Any husband who may hereafter acquire the separate property of the wife, shall be responsible for the debts contracted before marriage, to the extent only of the property so acqmred.
I apprehend that the term husband comprises persons who were husbands at the date of the act, obtaining such property, for example, on the 19th of July, 1853.
I tMnk also, that it is reasonable to suppose the legislature, in the act of 1853, (apprised that in the act of 1848 they had prevented the husband from taMng existmg property, or future acqmsitions,) may have considered it an act of equity to exempt Mm from a general liability, and to adjust such responsibility by the measure of the property he might obtain.
On tMs assumption, then, the question is, whether the act is constitutional in its application to the present case?
On the 9th of October, 1850, when the goods were sold, the plaintiff had a right to look to the party with whom he contracted, for payment, to be obtained by the usual remedies. He had also knowledge of the fact, that as the law then stood, he should have the personal responsibility of any future husband, unless between the date of the sale and the marriage, a law might exempt such husband. On the 21st of October, 1850, he became entitled to that personal obligation. The act of 1853 divests him of it.
In considering the legal relation established between the parties by the marriage, it ought not to be overlooked, that the plaintiff was bound to know that the legislature had refused to allow the husband to take the wife’s property. On the other hand, he *192 was entitled to the benefit of the rule, that the husband was responsible, irrespective of any acquisition of property.
I do not think that the cases referred to, under the constitution of the United States, forbidding laws impairing the obligations of contracts, are as pertinent to the present as the cases upon retrospective laws, affecting existing rights, and interpreting the clause of our own constitution, that no one shall be deprived of property without due process of law.
The late case of Westervelt v. Gregg, in the Court of Appeals, (2 Kernan, 202,) is of the highest importance upon this subject. In 1840, a legacy vested in the wife of the defendant, under the will of her father. In 1846, a petition was presented to the surrogate for an account and payment of the legacy. In September, 1849, the surrogate settled the accounts, reserving the question to whom the legacy should be paid; and in November, 1849, after argument, he decreed payment to the husband. This being affirmed by the Supreme Court, an appeal was taken to the Court of Appeals.
The following points are deducible from the judgment:
That the husband, at the passage of the act of 1848, was entitled to prosecute for the legacy, and to take the money when recovered, to his own use; he had a right to assign it for valuable consideration, which would cut off the wife’s right to it, in the event of survivorship. If he survived the wife, it would belong to him absolutely. It was only in case of his death first, and before possession taken, that she would take it.
That the second section of the act of 1848, upon its proper construction, did operate to take away this right from the husband.
That the right to recover the legacy was property. “An immediate right of action for the recovery of money, which, when recovered, is to belong to the party in whom the right of action exists, (subject only to the contingency of his death before judgment,) is a valuable pecuniary interest,” and is protected by the constitution as property.
That the act of the legislature was, in this respect, therefore, void.
After a careful consideration, I am unable to discern a valid ground of distinction between this case and the present. The plaintiff acquired a right to resort, for recovery of his demand, to *193 the property of the husband. In depriving him of this, the statute robs him of a substantial right to look to that property for his satisfaction. This is not a restriction of the extent of a remedy, which might, under circumstances, be valid, as in the furniture exemption act. (See Morse v. Goold, 1 Kernan, 283.) There is the actual withdrawal of a fund, to which the law had given him authority to have recourse, and, besides this, is the deprivation of the advantage of a personal responsibility which would arise Rom a judgment, independent of existing property.
In the case of Foot v. Morris, (12 Legal Observer, 61,) I had, in a case at Special Term, arrived, doubtingly, at a different result; and I expressed a hope that, as the case was new, it might be put in a way of revision.
I am now satisfied that my conclusion was wrong. I think too much effect was given to the act of 1848.
In our opinion, the judgment below should be reversed, and judgment be entered against both defendants, with costs, in the usual form.