## The accounting in TERRENCE BOYLE's *Estate.*

THE law of married women before the act of 1860. Husband and wife cannot be partners. The law of 1860 does not relate to earnings and profits made by a woman in a business in which she is united with her husband. Husband's estate liable for wife's separate property put into the business and received by him, with interest.

R. H. BROWN, *for Executors.*
A. W. BRADFORD, *for Mrs. Boyle.*

THE SURROGATE. The testator died in May, 1862. At the time of his decease, there was, in the house occupied by himself and his wife, the sum of $1,000 in gold coin. This amount is retained by his widow, and claimed by her as partly or entirely her separate property, under the following state of facts:

The parties were married on the 27th of February, 1855: and it appears that a month after marriage she went into the millinery business in a store hired by the husband, 106 Eighth avenue. She was acquainted with the business, and she had $100 capital, with which cash she purchased the first goods, and also bought $200 more on credit, all in her own name. So far as appears, this $100 was the only cash capital then invested in the business. About two months after that time the business began to be done by both the husband and wife, he making the purchase of materials, taking the proceeds of the business and investing them; she attending to the manufacturing of the articles and their sale; and this was the condition of things up to three months before testator's death, when he mostly ceased to attend to the business, in consequence of illness, and it was thence kept up without his aid. For the first three or four years the only sign on the premises was "Mrs. Boyle's Millinery." After that it was "Boyle's Millinery." All the time the business card was printed "Mrs. Boyle's Millinery Store."

The widow now claims that the business, with its profits, including the gold in contest, was hers, or else that she was a partner with testator. There is no question that the gold is part of the earnings of the business. The executors claim that it belongs to the estate.

By the Common Law, marriage vested in the husband all the moneys and personal chattels of the wife, which he might reduce to possession during coverture, and he might dispose of them absolutely by sale or by will. Marriage was considered an unqualified gift to the hus-

band of all the goods and chattels of which the wife was possessed at the time of marriage, or became afterwards possessed in her own right. He was also entitled to all the wife earned during coverture by her time, services, talents or industry. In return for this advantage, the husband was liable for the wife's debts.

The acts of the Legislature of this State, several in number, have partially changed the law with respect to the property of married women. The act of 1848, as amended in 1849, may be briefly described as having vested the property of married women in themselves, while that of 1860 had a more particular reference to the carrying on of business, and the control of their separate property by married women. Intermediate between these acts, the business under which the questions in this case arise, was begun and established, namely, in March or April, 1855.

The marital rights of the husband, as they existed under the Common Law, continued to exist as to the business or share of this business carried on by the wife, in all respects, except so far as they were taken away by statute. In *Brown* v. *Lee*, 5 *Hill*, 226, the Court said: "It is reasonable to presume the Legislature, in passing a statute, does not intend to interfere with or abrogate any former law relating to the same matter, unless the repugnance between the two is irreconcilable;" and in the case of *Birly* v. *Bambacher*, 5 *Duer*, 187, the Court, in construing the act of 1848, said, that "it is needless to cite authorities to show that it is only by express words, or a necessary implication, that a legislative enactment can operate as a repeal or alteration of an established rule of the Common Law."

What were these rights in 1855? In the case of *Freeman* v. *Oiser*, in 5th *Duer*, 477, decided in the same year, it was held that before the acts of 1848–49, the wife could not carry on any trade or business separately from her husband, unless by his assent and agreement; and

that those acts did not change the law in the case of a married woman carrying on trade in her own name; that a married woman had obtained, under these acts, no right to invest her property in a trade, carried on by her in her own name, so as to hold the earnings of the business protected from the claims of the husband's creditors; and that the time and services of the wife were still her husband's. I consider that such was the law in 1855, when this business was commenced, and when, two months later, it passed into the actual control of the husband.

Following this, and similar constructions of the law of 1849, and apparently in consequence of them, came the statute of 1860, which provides that a married woman thenceforth might bargain, sell, assign and transfer her personal property, and carry on any trade or business on her sole and separate account, and that the earnings of any married woman from her trade, business, labor or service shall be her sole and separate property.

I do not consider that this act affects the business in question, or that portion of its earnings that may have accrued since it took effect in 1860. The clear construction of it is, that it relates to business carried on by a wife separate from the husband, and to earnings and profits made by the wife independent of his co-operation. If the wife be united in a business with her husband, I conclude that she cannot avail herself of the benefit of the act, but that the proceeds of the business still remained the property of the husband, and must be so accounted for.

The widow, nevertheless, must be held in this case to be a creditor of her husband's estate to the amount of the $100 put into the business and thus received by the testator, with lawful interest since March, 1855.