PEOPLE *ex rel.* WADE v. STRACK.

*Statute construction — New York city — Laws of 1870, ch. 137, 1873, ch. 335 — when statutes retroactive.*

In January, 1873, the board of assistant aldermen of New York city, which had been elected for two years from January 1st, chose W. president under the provisions of Laws of 1870, chapter 137, and by resolution declared him elected for the year 1873. There was then no provision of law fixing the term of the office. By Laws 1873, ch. 335, § 6, each board of the common council is authorized to choose from its own members a president, etc., and when once chosen the president can only be removed before the expiration of his term as alderman or assistant by a four-fifths vote, etc. It is also provided that the act " shall not be construed to require or authorize a reorganization of the existing board of assistant aldermen." In January, 1874, the board elected S. president. *Held,* that the effect of the law of 1873 was to leave the organization of board in question as it found it; that at the time of W.'s election the board had power to fix the term of office (1 R. S. 117, § 8), and that the act of 1870 did not enlarge that term, and S. was entitled to the office.

Statutes are not applied retrospectively by mere construction. The rule is that they cannot have such a construction unless so declared by express words or positive enactment, or unless a clear intent of the legislature to give them such retroactive effect is shown by the language used.

CASE submitted upon an agreed statement of facts under § 372 of the Code. The proceedings were brought in the name of the People *ex rel.* William Wade, and said William Wade against the respondent, Joseph Strack, to determine between the claims of

the relator and respondent to the office of president of the board of assistant aldermen. The facts appear in the opinion.

*Henry E. Davies,* for relator.

*Chas. W. Brooke,* for respondent.

DAVIS, P. J. It appears by the agreed statement of facts in this case that the members of the board of assistant aldermen of the city of New York were elected in the fall of 1872 for the term of two years, commencing on the 1st day of January following; that on the first Monday of January, 1873, the board organized by the election of the officers authorized and required by law; that at such election the relator, William Wade, was elected president of said board, by resolution declaring him to be so elected for the year 1873, and that the board thereupon proceeded to and continued to transact its business under such organization until and after the passage of the act entitled "An act to reorganize the local government of the city of New York," passed April 30, 1873. Laws 1873, chap. 335.

Section 2 of article 2 of the above-named act declares that the legislative power of the corporation shall continue to be vested in a board of aldermen and a board of assistant aldermen, who, together, shall form the common council of said city, and that from and after the 1st day of January, 1875, the board of assistant aldermen shall be abolished, and thereafter the board of aldermen shall constitute the common council. The sixth section of the act declares that each board shall choose a president from its own members, by a call of the names of the members of the board, upon which call each member shall announce his choice, and when once chosen, the president can only be removed, before the expiration of his term as alderman or assistant alderman, by a vote taken by a call of ayes and noes of four-fifths of all the members of the board of which he shall have been chosen president; and the last clause of the section provides that it "shall not be construed to require or authorize a reorganization of the existing board of aldermen or board of assistant aldermen."

On the 5th of January, 1874, the board of assistant aldermen adopted a resolution that, "at the hour of twelve of that day, the board proceed to reorganize, and that the same be made a special order for that hour;" and at the time specified the board proceeded

to elect the respondent to the office of president of the board. The relator was not removed by a vote, taken by ayes and noes, of four-fifths of the members of the board, but the election was had upon the claim that the relator's term of office had expired.

The case states that the respondent upon this election claims the office of president of the board, and the right to exercise its powers and duties and enjoy its emoluments. The relator claims that he is still the lawful president of the board.

The relator was elected president under the provisions of the charter of 1870. Laws of 1870, chap. 137. The ninth section of that charter provides that "each board shall choose a president from its own members." It contains no provision touching the term of office of the president; nor as to the mode of choosing, nor as to the manner of removal. At the time of its passage the term of office of assistant alderman was limited to one year, but by a subsequent amendment the term was extended to two years, and the relator and the members of the board of which he was chosen president, were elected subsequently to the amendment. The act of 1873 introduces several new features : First, by designating how the choice of president shall be made, to wit : " By a call of the names of the members of the board, upon which call each member shall announce his choice; second, by making the term of office of the president, when chosen, concurrent with his term as alderman or assistant alderman ; third, by declaring how only he may be removed, to wit: "by a vote taken by a call of the ayes and noes of four-fifths of all the members of the board." The section containing these provisions supersedes section 9 of the charter of 1870, and is clearly applicable to the boards existing at the time of its passage, except wherein restricted by its own or some subsequent provisions of law.

The imperative language of section 6 of the charter of 1873 might, perhaps, have been construed to require a complete reorganization of the respective boards by a new election of officers; and to guard against such an effect, the legislature declared that this section " shall not be construed to require or authorize a reorganization of the existing board of aldermen or board of assistant aldermen."

The effect of the charter of 1873 was to leave the existing organization of the boards precisely where it found them. It neither required nor gave authority for reorganization, nor did it diminish or

enlarge any existing terms of office. Doubtless it subjected all future elections of presidents of the boards to its prescribed manner of choosing, its mode of removal, and its term of the office, as indicated in the section. Withholding authority for reorganization in the manner in which that is done in the act was equivalent to declaring such reorganization to be unlawful, and therefore if the board, after the passage of the act of 1873, had proceeded to reorganize by the election of a new president during the existing term of the relator, its proceedings, however formal, would have been in violation of law and therefore void. But there can be no doubt that the provisions of the charter of 1873, relative to the election of a president of the board, are quite as applicable to any exigency that may arise requiring a new election, as to the original organization of a new board. That is to say, if a vacancy in the office of president of the board occur by death or resignation, or removal of the incumbent from the city, or any other event, the board is clothed with ample power "to choose a president from its own members," under section 6 of the new charter. The act of making such choice would not be "reorganizing" within the sense in which that word is used in the act. The intent of the restriction was to prevent the substitution of a new organization for the existing one while the latter was in full force and operation, and not to prevent that kind of reorganization which springs from the happening of vacancies or the ending of fixed terms of office.

It is claimed by the respondent that his election was not made to supplant an existing officer, by removing him from a continuing term, but to fill a vacancy which had occurred from the expiration of an official term. The disposition of this case depends altogether upon the correctness of this position, and that, in turn, depends upon the question whether the resolution of the board passed at the election of the relator, declaring him to be elected president for the year 1873, was a lawful designation or limitation of his term of office. There seems to be no room for doubt that the intention of the board was to make the relator president for one year, leaving the succession for the second year open to a further choice. Had the board power to do this, or was it bound to elect once for all and for the full period of the term of assistant alderman? If we refer to the charter of 1870, under which the board acted in electing the relator for the year 1873, we find the power of choosing the president given in the most general terms: "Each board shall choose

a president from its members." Here is no prescribed manner of choice and no declared term of office. The choice may be by resolution, by *viva voce* vote or by ballot, and there seems to be no reason to doubt that the board, under such general grant of power, may determine for itself the form of its exercise. May it also by the resolution, the passage of which elects the officer, prescribe the term for which he is chosen? Where the constitution or a statute fixes the term of an office, there is no power in the appointing or electing body to prescribe any other term. The power must be exercised in conformity to the law, and the attempt to impose a limitation short of the term fixed by statute is as nugatory as would be an attempt to enlarge the term. But in this case there was no existing statute declaring a term. The sole and whole power to choose was handed over by statute to the board, without limitation as to term or restriction as to mode.

In this state of facts we are not at liberty to seek for analogies in the rules and practice of parliamentary or other legislative bodies if we have general statutes applicable to the case. It will probably be found that the usage of such bodies is to choose a presiding officer for the full official term of the body itself; but such a rule, if otherwise obligatory, cannot prevail in cases where the legislature has established another and a different one. Section 8 of the general provisions of the Revised Statutes " respecting the appointment of officers, their qualifications, the commencement and duration of their offices," is in these words: " Every office of which the duration is not prescribed by the constitution, or is not, or shall not be declared by law, shall be held during the pleasure of the authority making the appointment." 1 R. S. 117, § 8.

The president of the board of assistant aldermen is a civil officer, chosen under authority conferred by law, and amenable as such to the laws of the State. At the time of the election of the relator the office was one of which the duration was neither prescribed by the constitution nor declared by law. The statute, therefore, provided that it should " be held during the pleasure of the authority making the appointment." That pleasure was declared by the resolution electing the relator, to be that he was chosen for the year 1873. A question might have arisen whether, if there had been an attempt to remove the relator during the year 1873, the resolution could operate so to fix a term as to prevent a removal at pleasure, but that question does not arise where the period expressed has

elapsed and the appointing authority is proceeding to fill the office after the lapse of the time named.

Unless there is something to be found in the charter of 1873, which operates to extend the duration of the relator's office as president of the board beyond the time prescribed in the resolution electing him, a vacancy in the office occurred on the expiration of the year 1873, which the board was at liberty to fill by an election conducted in conformity to the provisions of the new charter. It is the opinion of the learned counsel to the corporation that this is found in the words "and when once chosen he can be removed before the expiration of his term as alderman or assistant alderman only by a vote taken on a call of the ayes and noes of four-fifths of all the members of the board." This language is not retroactive. It was not designed to legislate the relator into office beyond his existing term. Its primary subject was the regulation of amotion from office, and it only follows as an incident to that subject that it fixes the duration of future terms. It is, therefore, to carry it out of its intended channel to hold that its effect is to enlarge the duration of an office beyond the limitation lawfully fixed before the passage of the statute. Even if it might properly be held to prescribe the mode in which the relator could only be removed from the office, yet it would not follow that it would also prevent the expiration of his term by its own limitation, which event would render removal both unnecessary and impossible. Statutes are not applied retrospectively by mere construction. The rule is, that they cannot have such a construction unless so declared by express words or positive enactment, or unless a clear intent of the legislature to give them such retroactive effect is shown by the language used. *Jarvis* v. *Jarvis*, 3 Edw. 462; *Butler* v. *Palmer*, 1 Hill, 324; *Wadsworth* v. *Thomas*, 7 Barb. 445; *Johnson* v. *Burrell*, 2 Hill, 238; *Berly* v. *Rampacher*, 5 Duer, 183; *Ely* v. *Holton*, 15 N. Y. 595; *Wood* v. *Oakley*, 11 Paige, 400; *McCloskey* v. *Cromwell*, 11 N. Y. 603.

Our conclusion is that the relator was not legislated into a term of office beyond that for which the board had chosen him; that on the expiration of that term his office was vacant by lapse of time, and that, until his successor was chosen, he was discharging its duties by force of the general statute, which provides for such discharge "until his successor should be duly qualified." 1 R. S. 17, § 19, and that the board, after such expiration of the term, was, in

choosing his successor, acting upon an exigency which required no removal, and was exercising its original and lawful authority.

Judgment must, therefore, be given for the defendant.

DANIELS and DONOHUE, JJ., concurred.

*Judgment for defendant.*