KIES *v.* YOUNG.

Opinion delivered October 30, 1897.

64   381
166   118
64   381
q72   246

HUSBAND'S LIABILITY FOR WIFE'S ANTENUPTIAL DEBTS.—The common-law liability of a husband for his wife's antenuptial debts has not been abrogated by the married woman's act (Sand. & H. Dig., §§ 4940–4961) which excludes the marital rights of the husband in the wife's property during coverture, and confers upon married women power to acquire and hold property.

Appeal from Pulaski Circuit Court, Second Division.

JOSEPH W. MARTIN, Judge.

The appellee, J. F. Young, brought this action against J. H. Kies and his wife, U. M. Kies, for the sum of $139.25.

Upon the trial in the circuit court, where the case was tried on appeal from a judgment of a justice of the peace, it was agreed that Mrs. Kies, while a widow and unmarried, kept a boarding house, and purchased supplies from, and became indebted to, the plaintiff Young. Young brought suit against her, and recovered judgment for the sum of $135.85. Afterwards she married the defendant J. H. Kies. At the time she married Kies she had no property except wearing apparel, and has nothing more now.

Upon these facts the circuit court declared the law as follows:

"Though a debt contracted by a married woman, while covert, on account of her separate estate or business is, by statute, not binding on her then husband, and hence not upon a subsequent husband, yet a debt contracted by her while discovert, after the death of her first husband, and before marriage to the second husband, and when no legal disability exists, stands upon a different footing. In such a case, the statute having made no provision for, or indicating any intention of, releasing the last husband from the indebtedness created by marriage, the common-law liability still exists, and the husband is responsible for the debts of his wife incurred *dum sola*."

The court thereupon gave judgment against defendant Kies.

*Jos. W. House*, for appellant.

Our "married women's act" gives a woman complete control over her property after marriage (Sand. & H. Dig., §§ 4940–4961), and this statute is to be liberally construed. (Sand. & H. Dig., § 4960.) The husband was liable for the antenuptial debts of his wife at common law, for the reason that, by marriage, the wife was deprived of her rights of acquiring and holding property. Tyler, Infancy & Coverture, 332–33; 27 Ark. 289. The common-law rules in this latter respect being abolished by the statutes above cited, the rule falls, with the failing of its reason. 48 Ill. 49; 6 Tex. 234; 5 Tex. 301; 32 Tex. 288; 32 Kas. 410–411; 63 Pa. St. 368;

4 G. Greene (Ia.), 186; 52 Cal. 412; 60 Ark. 266; Constitution of Ark. art. 9, § 7.

*Carmichael & Seawel*, for appellees.

Prior to the "married women's act" in Arkansas, the husband was held to be liable for the antenuptial debts of his wife. 27 Ark. 288; 19 Ark. 430; 16 Ark. 539; 8 Ark. 241. The husband's common-law liability was not based solely on the fact that he obtained control of his wife's property by virtue of their marriage. For some of the various reasons assigned therefor, see Bl. Com., p. 443; 2 Bish. Law of Mar. Wom., § 312; Kelly, Contr. of Mar. Wom., p. 13; 10 S. W. (Ky.) 277. Many of these reasons remain today unchanged by statute. His rights as to the labor and earnings of his wife are not all swept away. Endlich, Interp. Stat., 422; 47 Ark. 175; 94 U. S. 558; 5 Duer (N. Y.), 185; 2 Bish. M. W. § 313. A married woman cannot be sued alone for her debts contracted before marriage. Bishop, Law of M. W., p. 481; Sand. & H. Dig., § 5641. The statute only relieves the husband from being joined in suits against the wife for debts contracted after marriage and for her separate estate. 33 Ark. 601; 1 Pars. Contr. (8 Ed.) 393; 8 Paige, Ch. (N. Y.) 39; Bish. Law of Mar. Wom. § 310. The common-law legal unity of husband and wife still exists to some extent. 30 Ark. 17; 31 Ark. 678; 56 Ark. 294; 39 Ark. 358; 103 Mass. 300–4; 2 Bish. M. W. § 423. The liability for torts of wife rests on same principle as that for contracts. 34 Ark. 401; 48 Ark. 220. The statute neither expressly nor by necessary implication changes the common-law rule as to these debts. 5 Duer, 183; 31 O. St. 546; 42 Mo. 303; 47 N. Y. 577; 103 Pa. St. 67; 19 Wis. 333; 9 Am. & Eng. Enc. Law, 822; 16 L. R. A. 530. If all the reasons for a rule are taken away, the rule must fall; but this is not so if any of the reasons remain. If the reason for the liability of the husband for antenuptial debts of the wife has ceased, so has the rule of his liability for her support. 1 Bish. M. W. 58, 887; 1 Pars. Cont. (8 Ed.), star pages 9, 350; 1 Bish. M. W. 72.

RIDDICK, J., (after stating the facts.) The question presented in this case is whether a husband is liable for the antenuptial debts of his wife. It is conceded that the husband was,

at common-law, liable for such debts (*Harrison* v. *Trader*, 27 Ark. 288), but the contention is made that the effect of our statute, which excludes the marital rights of the husband in the wife's property during coverture, and confers upon married women power to acquire and hold property, is to abrogate this rule of the common law.

It is plain that this statute does not expressly change or affect the liability of the husband, but appellants argue that the reasons upon which the rule was based have, by virtue of such statute, ceased to exist, and that therefore the rule itself should cease. It will be admitted that if a rule of law be based upon certain specific reasons, which can be enumerated, and upon no others, and these reasons are all taken away, then the rule must fall; but if some of the reasons for the law remain, the law itself remains, and the courts must enforce it until changed by the legislature. 2 Bishop, Married Women, § 65. Now it is difficult to state precisely all the reasons upon which was based the rule of law making · the husband responsible for the antenuptial debts of his wife. It is probably true, as stated by the supreme court of New York, that an inquiry into the reasons of such rule "involves the consideration of all the rights, obligations, duties, liabilities and disabilities given by the common law to the marital relation. And, so far as observed, no writer has yet authentically furnished all the reasons which may have influenced the various conditions of coverture imposed by the common law." *Fitzgerald* v. *Quann*, 33 Hun, 652.

At common law the husband and wife were regarded as one person; the wife's legal existence was merged in that of her husband. "Upon this principle of a union of person in husband and wife," says Blackstone, "depends almost all the legal rights, duties and disabilities that either of them acquire by marriage." 1 Blackstone, Comm. 442. Among the duties imposed by the law upon the husband was the duty to pay the debts of the wife contracted *dum sola*, for, says the same learned author, "he has adopted her and her circumstances together." 1 Blackstone, Comm. 443.

But if the liability of the husband rested in any degree upon the legal unity of the husband and wife, that reason still

exists to some extent; for, notwithstanding the important changes wrought by our statute concerning the powers and rights of married women, many of the rules of law resting upon this unity of the husband and wife are still enforced by the courts of this state. This court, since the passage of the statute above referred to, has held that, by reason of such unity, the husband and wife cannot contract with each other (*Pillow* v. *Wade*, 31 Ark. 678), nor become partners in business (*Gilkerson-Sloss Com. Co.* v. *Salinger*, 56 Ark. 294), nor sue each other in a court of law (*Countz* v. *Markling*, 30 Ark. 17). By reason of this legal unity, land in this state conveyed to the husband and wife jointly vests in them an estate by entirety, so that the survivor takes the whole, whereas, but for this theory of legal unity, they would take as tenants in common. *Robinson* v. *Eagle*, 29 Ark. 202; *Kline* v. *Ragland*, 47 *id.* 116; *Branch* v. *Polk*, 61 *ib.* 388. It will be seen, by reference to these and other decisions of this court, that the common-law unity of husband and wife still exists in this state, except so far as the legislative purpose to modify and change it has been expressed by statute.

But it is contended that the husband's liability rested upon the common-law principle, now abrogated by statute, that the personal property of the wife, the use of her real estate, the right to her labor and earnings, passed to the husband upon marriage. She was, it is said, by marriage deprived of the use and disposal of her property, and could acquire none by her industry; and it was, therefore, necessary at common law to impose upon the husband the duty of paying her debts, otherwise her creditors would be remediless.

It is true that at common law the creditor had, after marriage, no means of collecting his debt by action against the wife alone, so the common law solved the difficulty by requiring the husband to pay such debts. But the marriage of a *femme sole* may still place many obstructions in the way of her creditor who attempts to collect his debt by process of law. If there be issue of the marriage born alive, then, at the wife's death, the husband's title by curtesy attaches to her land as at common law, and this may result in postponing the rights of her

creditors until after the termination of such life estate, as was held in the recent case of *Hampton* v. *Cook* (64 Ark. 353). The husband is still entitled to the benefit of her labor and services, except when "performed on her sole or separate account." Sand. & H. Dig., § 4995.

"The true construction of the statute," says the court of appeals of New York, "is that she may elect to labor on her own account, and thereby entitle herself to her earnings, but, in the absence of such an election, or of circumstances showing that she intended to avail herself of the privilege and protection conferred by the statute, the husband's common-law right to her earnings remains unaffected." *Birkbeck* v. *Ackroyd*, 74 N. Y. 356.

Now while, under our statute, a married woman may acquire property by engaging in business, or by performing labor and services upon her sole and separate account, yet, as the creditor has no means of compelling her to engage in such business, or to perform service upon "her sole and separate account," and as it is the rare exception that a married woman does engage in business or perform services for her separate account, we can easily see that marriage may still leave the creditor without a remedy unless the husband be held liable. The woman may be the earner of valuable wages, and may have been credited on that account; yet if, after marriage, she chooses to labor for her husband only, the creditor can do nothing as against her, for, however valuable her earnings may be, they belong, under such circumstances, not to her, but to her husband. *Birkbeck* v. *Ackroyd*, 74 N. Y. 356; S. C. 30 Am. Rep. 304; *Birkbeck* v. *Ackroyd*, 11 Hun (N. Y.), 265; *McCluskey* v. *Provident Institution*, 103 Mass. 300, 304.

Again, it seems that the statute has made no provision for an action against the wife alone upon her antenuptial contracts. At common law the wife could not be sued alone. This was one reason for making the husband liable for the wife's antenuptial debts; and if the statute has made no change in the law in this respect, it must follow that the husband is still liable for such debts. 2 Bishop, Married Women, §§ 312, 322.

The language of our statute is that "a married woman may bargain, sell, assign and transfer her separate personal property, and carry on any trade or business, and perform any labor or services, on her sole and separate account, * * and she may alone sue or be sued in the courts of this state, on account of said property, business or services." Sand. & H. Dig., § 4946. There are other sections of the statute providing that the contracts of a married woman in reference to her sole and separate estate or business shall not be binding upon her husband, and that judgments recovered against her may be enforced by executions against her sole and separate property, etc.; but these and other sections of the statute relating to actions against married women seem to refer to the actions mentioned in the section above quoted,—that is, to those on account of her separate property, business or services, or upon her contracts in connection therewith. The reform undertaken by the legislature was to empower a married woman to hold property and make contracts, and in effecting this purpose it provided that she could be sued upon such contracts, and that her husband should not be liable therefor. But the question of her antenuptial debts does not seem to have been considered by the legislative mind, and there is in the statute nothing indicating an intention to change the law in reference thereto, or to relieve the husband of his liability therefor. Our statute under consideration was copied, or seems to have been copied, from the New York statute, and the courts of that state hold that the statute does not permit the wife to be sued alone in all cases, but simply enacts that she may be sued alone in actions having reference to her separate estate. *Fitzgerald* v. *Quann*, 109 N. Y. 441; *id.* 33 Hun, 652.

The legislature of New York, by act of 1853, relieved the husband of liability for the antenuptial debts of his wife, but previous to the passage of that act he was held to be liable for such debts notwithstanding statutes there similar to our statute. *Berley* v. *Rampacher*, 5 Duer, 183.

The liability of the husband at common law for the torts of the wife not committed in his presence rests upon substantially the same reason as his liability for her antenuptial debts. *Quann* v. *Fitzgerald*, 33 Hun (N. Y.), 657; 2 Bishop, Married Women, §§ 254, 312. But the New York courts, under the

same statute that we have, hold that the husband is still liable for such torts, and base their decision upon the ground that the wife cannot be sued alone for such torts, and, further, that a statute should never be construed as abolishing a rule of common law, unless the intention to repeal is made known by express words or necessary implication. *Fitzgerald* v. *Quann*, 109 N. Y. 441.

The courts of many other states have arrived at the conclusion that these acts emancipating married women from the disabilities imposed by common law do not of themselves relieve the husband of his common-law liabilities, unless so expressed in the act. While some courts hold to the contrary, the weight of judicial opinion seems to be decidedly in favor of the view adopted by the New York courts, on the ground that the repeal of settled principles of law by mere implication should not be favored. *Alexander* v. *Morgan*, 31 Ohio St. 546; *Platner* v. *Patchin*, 19 Wis. 333; *McElfresh* v. *Kirkendall*, 36 Iowa, 224; *Ferguson* v. *Brooks*, 67 Me. 251; *Morgan* v. *Kennedy*, 62 Minn. 348; S. C. 54 Am. St. Rep. 647; *Gill* v. *State*, 39 W. Va. 479; S. C. 45 Am. St. Rep. 928; *Seroka* v. *Kattenberg*, 17 Q. B. D. (Eng.) 177; *Mangam* v. *Peck*, 111 N. Y. 401; 9 Am. & Eng. Enc. Law, 822.

The question as to whether the statute conferring enlarged powers upon married women has impliedly repealed the rule of law making the husband liable for the wife's antenuptial debts has never been decided by this court. That question was not involved in the case of *Gill* v. *Kayser*, 60 Ark. 266, for the debt there was contracted during marriage, and had reference to the wife's separate property. It came within the provision of the statute which exempted the husband, and did not stand on the same footing as her debts contracted *dum sola*. But in *Stowell* v. *Grider*, 48 Ark. 223, the question was incidentally referred to by Judge Smith, who said that the husband was still liable for such debts. The same learned judge in *Kosminsky* v. *Goldberg*, 44 Ark. 401, discussing the question of the liability of the husband for the torts of the wife, said that the husband was liable for such torts, although he was absent, and had no knowledge of the intended act; and he placed the husband's liability upon the ground

that the wife could not be sued alone. But there is no more reason for saying that a wife could be sued alone for her ante-nuptial debts than that she could be sued alone for her torts committed in the absence of her husband. If these two opin-ions by Judge Smith stood alone, we should attach no great importance to them, for the question as to the effect of the leg-islation giving enlarged powers to married women upon the common-law liability of the husband does not seem to have been raised in these cases. But these expressions of the learned judge are in harmony with many other expressions of opinion by this court, some of them quite recent, to the effect that the courts of this state will not move in advance of the clearly expressed legislative purpose to remove the disabilities, rights and liabilities of coverture.

The rule of law making the husband liable for the debts of the wife contracted *dum sola* was well known, and had often been enforced by the courts of this state. As the legislature which enacted the married women's act did not, either by express words or by clear implication, express an intention to repeal such law, the presumption should be that they intended the rule should remain. Force is added to this argument when we con-sider that the act in question was copied from the New York law, but that our statute omits the provision found in the New York statute relieving the husband of the liability for his wife's antenuptial debts. Our conclusion is that the husband should be joined with the wife in actions against her for debts contracted by her *dum sola,* and that he is still liable for such debts as at common law.

We admit that, as the husband has been deprived of the legal ownership and control of the wife's property during cover-ture, it would seem logically to follow that he should be relieved of some portion of his common-law liability for her antenuptial debts, but that is a question for the legislature, and not the courts. While, theoretically, the position of the husband is much worse now than at common law, still, as a matter of actual fact, this is not altogether true. The statute permits the wife to hold and use her property as her own, but the close relationship that exists between husband and wife, and the love of a wife for her husband, potent now as of old, generally results in placing at his

disposal all her worldly goods.   The statute enabling married women to acquire and hold property does not, and no statute can, to any great extent, protect the wife's property against the aggressions of the husband, for it is generally her will that he should use such property as he pleases.   But the statute does protect her property against the creditors of her husband.   At the common law, if the husband became insolvent, the wife's personal property and the use of her real estate during his life could be seized by his creditors.   If she acquired property by her earnings, that also could be seized, for it belonged to her husband.   All this has been changed by the statute conferring upon married women power to acquire and hold property, and in this way these statutes frequently operate to the advantage of the husband.   Many an insolvent husband has regained his financial footing by the use of his wife's property, protected against his creditors by the operation of such statutes.

It is, indeed, possible under our statute that a woman in debt, but with considerable money, should marry, and then hide away her money, and allow her creditors to force her husband to pay her debts.   Yet, considering the nature of woman, we think the case would be rare when this would be done against the husband's will.   But if the husband was exempt from liability, a woman in debt, but with money, might, upon marriage, bestow her money upon her husband, and he might squander or conceal it, and refuse to pay her creditors, and leave them with a very doubtful remedy.   The worst effect of statutes enabling married women to acquire and hold property is that when the husband and wife are dishonest, they place the creditor at a great disadvantage.   Mr. Bishop, who has given much thought to this question, says that under these statutes "husband and wife, if in due accord, and mutually inclined to defraud the rest of mankind, have it well in their power to live in wealth procured by lawful cheating from confiding creditors."   If the debts are hers, the property can be shifted to him.   If he be the one in debt, he can so arrange his affairs "that all the earnings shall be hers, and all the expenses his, whereby, in a short time, his estate is indirectly, but effectually, transferred to her, while apparently it remains his."   Bishop, Contracts, § 951.

Considerations of this kind furnish additional answer to

the argument that the courts should hold, as a matter of law, that all reason for the rule making the husband liable for the wife's antenuptial debts has passed away. Notwithstanding the statutes depriving the husband of his marital rights in the wife's property during coverture, it is still rare that a man marries a rich woman without receiving pecuniary benefit from her estate, and he should at least be held liable to the extent of such benefit; but these matters cannot be adjusted by the courts, and should be left to the legislature, where they belong. The hardship in this case is, not that the law allows the wife to retain her separate property, but in the fact that she had no property. The position of the husband here is not worse than it would have been had the statute in question never been passed. As such statute does not expressly or by clear implication relieve him of liability for the antenuptial debts of his wife, we must hold that the judgment of the circuit court against him is in accordance with the law, and it is therefore affirmed.

BUNN, C. J., (dissenting.) The single question presented in this record is whether or not a husband is liable for the debts of his wife contracted *dum sola*, next preceding her marriage to him. It is, of course, admitted that he is liable at common law, and also that in this state we have no express statute changing the common-law rule. The contention here is, on the part of appellants, that the reason for the common-law rule has been taken away, and that, the reason for the rule having ceased, the rule ceases also. Therefore the first inquiry is as to what was the reason for the rule under which the husband was held liable.

Tyler, in his work on Infancy and Coverture, pages 332 and 333, accurately and concisely states the reasons for the rule thus: "The principle upon which the husband, at common law, is liable for the debts of the wife contracted *dum sola* is, not that he received property from her, for the circumstances of his having received property from her does not increase his liability, nor the fact that he received no property by her diminish such liability; nor is the liability based upon the idea that he is a debtor; but the real ground of this liability is that

the wife, by her marriage, is entirely deprived of the use and disposal of her property, and can acquire none by her industry. The personal property of the wife passes absolutely to the husband, and he is entitled to the use of her real estate during coverture, and her person, labor and earnings belong unqualifiedly to him." The contention of appellant is that none of these reasons still exist with us, but that our more recent laws, superinduced by our changed condition and circumstances, have entirely done away with each and every reason of the common-law rule, and that therefore the rule should cease to be with us. Section 7, art. 10 of the constitution of the state, and sections 4945, 4946, 4947, 4948, 4949, 4951, 4957, 4958, 4959 and 4960, Sandél's & Hill's Digest. If there is anything in the idea that the wife is protected from suit by her marriage, then, as all the property which is acquired both before and after marriage is made her separate property, the rule that she can sue and be sued in reference thereto applies to her generally, for all practical purposes. If this constitutional provision and these and other statutes incidentally bearing on the subject have, as is contended, taken away the reasons for the existence of the rule, then it is needless for us to speculate upon the mere advantages or disadvantages, the policy or impolicy, of the rule; for, when a law is repealed, expressly or by implication, whether or not it was a good law is no longer a question.

The wife, in this state, is no longer deprived, entirely or in any degree, of the use and disposal of her property; and she is at liberty to acquire property by her industry as if she were a *femme sole*. Her personal property does not now pass to her husband on her marriage to him, absolutely, or in any sense of ownership, nor is he entitled to the use of her real estate during coverture; and, finally, she retains all that she brings to him, or may acquire after their marriage, and this is all made subject to the payment of her debts, and he is relieved.

The statement that, since the rule which makes the husband liable for the wife's torts is the same as that which makes him liable for antenuptial debts, and is based upon the same reason, and since the recent laws and statutes affecting the property rights of married women are not regarded as affecting any change in the law which makes the husband liable for the

wife's torts, therefore these laws cannot be regarded as producing any change in the rule which makes him liable for her antenuptial debts, is partly correct and partly incorrect. It is correct when applied to her torts committed before marriage, but entirely incorrect when applied to her torts committed during coverture. There is not a particle of difference in the reason which makes the husband liable for her antenuptial debts and that which makes him liable for her antenuptial torts. Both are obligations she has imposed upon herself while single; and necessarily, for identically the same reasons and no other, the husband is liable in both instances. *Hawk* v. *Harmon,* 5 Binn. (Penn.) 43.

But, while it is true that the husband is liable for the antenuptial torts of the wife, as he is for her antenuptial debts, and for the same reason, the same is not said of her torts committed during her coverture with him; for, while he is bound for her postnuptial torts, it is not because he is the owner and controller of her property, or of her labor and industry, but he is liable for the simple reason that he is her husband, and is therefore responsible for her personal conduct, except under peculiar circumstances. The rule in the two instances is founded on different principles; for, while the one is based upon property rights only, the other is primarily based upon the idea of personal unity and personal control of the wife's actions as the stronger of the two constituents of the union, and the owership and control of property and of the proceeds of labor and industry are only incidentally involved, if at all. The distinction will the better appear in the doctrine that "to hold the husband liable for antenuptial torts of the wife, she must be a wife *de jure*; whereas, to hold him liable for her torts committed during coverture, it is only necessary that she be a wife *de facto.* *Overholt* v. *Ellswell,* 1 Ashmead, 200. This is sufficient to show that the reasons for the rule that makes the husband liable for the antenuptial contracts and torts of the wife are not the same as for the rule that makes him liable for her postnuptial torts, the latter having the element of coercion, and the idea of mastery of the husband over the wife, in them.

It is contended that in New York, where the statutes are

identical with our own on the subject of the property rights of married women, the courts hold that the common-law rule has not been repealed by these statutes. The early statutes of this state were almost literal copies of those of New York on this and other kindred subjects, but our more recent statutes and constitutional provisions have no connection with or likeness to the New York statutes, new or old. In 1848, a statute was passed in that state in effect giving to every female who should marry all the real and personal property owned by her at the time of her marriage, as her sole and separate property. In 1853 another statute was passed, limiting the husband's liability for the wife's debts to the property he had by her. In a case arising after the act of 1848 was passed and before the act of 1853, the supreme court said: "If the rule of the common law, by which the husband is made liable for all the debts of the wife contracted by her before marriage, rested solely upon the transfer to him (which the marriage effects) of all the personal property of the wife, there would be great force in the argument that the act of 1848, by preventing his acquisition of the property of the wife, has discharged him from his liability for her debts. The case might then not unreasonably be held to fall within the purview of the very sensible maxim that, '*Cessante ratione, cessat etiam lex.*' · But it is manifest, upon a very slight consideration of the authorities, that the acquisition by the husband of the property of the wife is not the sole foundation of his common-law liability for her debts, although it may justly be urged as mitigating in some degree the severity of the rule. His liability, it is certain, is absolute and unlimited, without any reference whatever to the property which he acquires, or to which he may become entitled. It exists even when the wife, at the time of the marriage, has no property at all, present or future, or when that which she then possesses, or to which she may become entitled, is settled to her sole and separate use. We cannot therefore say that the fact or extent of his liability is at all affected by the provisions of the act of 1848." *Berley* v. *Rampacher*, 5 Duer, 186.

Had that court been considering the case in the light of our statutes, which, we have seen, do away with any possible reason assigned for the existence of the common-law rule, and

followed in the same course of reasoning, is it not indisputable that it would have held that the sensible maxim, "*Cessante ratione, cessat lex*," was exactly applicable? So the New York decisions, in reason, are certainly in support of the contention of appellant.

To sum up, I think that our more recent laws have shorn the common-law rule that the husband is liable for the ante-nuptial debts and antenuptial torts of the wife of every particle of reason upon which it was based, while this is not the case as to the wife's postnuptial torts, and therefore I am of the opinion that the judgment in this case should have been reversed.