## McKie *v.* McKie.

### Opinion delivered December 21, 1914.

1. CONTRACTS — INTERMARRIAGE — EXTINGUISHMENT OF OBLIGATION — COMMON-LAW RULE.—At common law the intermarriage of the two parties to a contract extinguished the obligation.

2. HUSBAND AND WIFE—PRE-NUPTIAL CONTRACT—ENFORCEMENT AFTER MARRIAGE—EQUITY.—A. executed her note and mortgage to B. to secure a loan to her; the parties thereafter intermarried. *Held*, under article 9, § 7, Constitution of 1874, and Kirby's Digest, § 5214, the common-law rule has been modified, and the unity of the parties to the marriage so destroyed that the obligations incurred before the marriage relation was entered into, are not extinguished by it.

Appeal from Garland Chancery Court; *Jethro P. Henderson,* Chancellor; reversed.

*Rector & Sawyer,* for appellant.

The debt and deed in trust are now enforceable. If not now enforceable, they are not extinguished, but merely dormant until the holder is under no disability

to enforce the same. Vol. 16, Laws of England, by the Earl of Hallsbury, p. 433, § 883; 21 Cyc. 1276, "Husband and Wife," and notes; 49 Ill. App. 163; 29 Ind. 564; 23 N. Y. 527; 1 N. Y. City Ct. 405; 76 Vt. 176. As to the reason for the rules as to marriage rights, see 50 Am. Dec. 534; 64 Ark. 389. As to the reason for the rule that marriage extinguishes obligations previously existing between the contracting parties, see *Cage* v. *Acton,* 1 Lord Raymond Reports, 517-520.

Have the reasons set forth by Lord Chief Justice Holt in the last named cause, been abrogated by our statutes?

In equity contracts between husband and wife will be enforced if reasonable. 41 Ark. 183; 42 Ark. 511; 49 Ark. 438; *Id.* 126; 95 Ark. 526.

The Constitution expressly frees the wife's separate estate from the debts of her husband, and the implication therefrom is that all other charges against it shall remain, and that in her "debts" are included debts, whether to third parties, or to her husband, that are equitable charges made by the situation. Art. 9, § 7, Const. 1874; 39 Ark. 242; Kirby's Dig., § 5228.

There may be contracts on the part of the wife that can not be enforced in a court of law, yet a court of equity will enforce them, if there is a lien upon her separate property by virtue of the acts of the parties, or the court will engraft a lien on her separate property if the equity of the situation demands it. It does not follow that, because the husband might be unable to recover on the debt in a court of law, he could not enforce the contract in a court of equity. 200 Mass. 437, 438; 117 N. Y. 411; 176 Mo. 107; Cord, Legal and Equitable Rights of Married Women, § 265; 36 Ark. 586; 48 N. J. Eq. 240; 67 Mo. 600; 7 Paige 112.

There is no case in point as to the question involved in this case, decided by this court, but see 49 Ind. 235-240; 16 S. W. (Ky.) 129; 102 Tenn. 439; 101 Tenn. 723; 120 Tenn. 589; 2 Story's Eq. Jur., § 1370; 73 Am. St. Rep. 899.

*Davies & Ledgerwood,* for appellee.

Was the debt extinguished by the marriage? The property upon which the mortgage was given was not the separate estate of a married woman, because appellee was at that time a single woman, and when she entered into the marriage contract with appellant, the note was paid, not extinguished, but *paid,* by the act of the parties in entering into the marriage contract, and not by operation of law. The court ought to have gone further in its decree, and ordered the satisfaction of the mortgage on the record. 31 Ark. 294; 102 Tenn. 439; Stewart on Husband and Wife, § 44.

Throughout a long line of decisions this court has declared the policy of this State to be that legislative enactments will not change the common law rule unless there are express words in the statue to that effect, and that all common law disabilities remain except when changed by express words or clear implication. 66 Ark. 118; 100 Ark. 69; 89 Ark. 118; 30 Ark. 66; 27 Ark. 288; 49 Ark. 428; 39 Ark. 361; 107 Ark. 70. See also 21 Cyc. 1276; 232 Pa. St. 89; 81 Atl. 1455; 102 Mass. 246; 105 Mass. 115; Smith's Cases on Law of Persons, 397; Newman on Pleading and Practice, 67; 16 L. R. A. 526; *Id.* 530; 101 Ark. 531; 67 Ark. 15; 80 Ark. 42; 87 Ark. 175; 88 Ark. 308; 92 Ark. 486, 490.

McCulloch, C. J. Appellant and appellee were at the time of the commencement of this suit, and are now, husband and wife, but at the time of the execution of the note and mortgage involved in this case they were not married. They resided in the city of Hot Springs, in this State, and appellee, being the owner of certain real estate situated there, borrowed a sum of money from appellant and executed to him her promissory note and a mortgage on the real estate to secure the payment of the same. Subsequently she and appellant intermarried, and the question raised in this case is whether or not the marriage extinguished the debt. Appellee instituted the action against appellant to cancel the mortgage on the ground that it had been extinguished

by the intermarriage of the parties, and appellant filed a cross-complaint to foreclose the mortgage.

(1) The rule at common law was that the intermarriage, of the two parties to a contract extinguished the obligation. The question, however, for decision in this case is whether modern statutes governing the marriage relation and property rights thereunder, particularly the provision of the Constitution of this State (Sec. 7, Art. 9) to the effect that the property of a married woman "shall, so long as she may choose, be and remain her separate estate and property," and the statute which provided that a married woman may transfer her separate property, carry on any trade or business, and sue or be sued in the courts of the State (Kirby's Digest, 5214) operate as a modification of the common law rule so as not to extinguish the obligation of a contract between the parties executed prior to the marriage. Statutes of this character exist well nigh universally in the American states, but the courts are not altogether in accord as to the effect thereof. In England there has been a great modification in the strict rules of the common law with respect to the property rights of married women, and the trend of the decisions there is to give a broad interpretation to these statutes in relaxation of those common law rules.

In Lord Halsbury's Work on the Laws of England (Vol. 16, p. 433), in commenting on the case of *Fitzgerald* v. *Fitzgerald,* L. R. 2 P. C. 83, where the English court decided that a husband's ante-nuptial contract to pay an annuity was not extinguished by the intermarriage of the parties but was only suspended, the following statement is found: "The rules of the common law were founded on the doctrine of the unity of the person, and the inability of husband and wife to sue one another, and although the Married Women's Property Acts contain no express provision on the subject, it is doubtful whether these rules have any application now that this disability has been removed. There seems on principle to be no reason why a husband or wife should not sue

the other on a contract made before marriage, unless, regard being had to the nature or terms of the contract, and the other circumstances of the particular case, a contrary intention appears.''

In some of the American states, where there are statutes similar to ours, they have been construed to modify the common law rule so as to allow the parties to sue on a contract made before marriage. In Massachusetts the court first decided against such modification, but the later cases have overruled the former ones, and now hold it to be the settled law of the State that the subsequent intermarriage of the maker and payee of a note does not extinguish the binding force of the obligation. *Butler* v. *Ives,* 139 Mass. 202; *Spooner* v. *Spooner,* 155 Mass. 52; *McKeown* v. *Lacey,* 200 Mass. 437.

In Illinois it has been decided that statutes similar to ours modify the common law rules so that a wife's ante-nuptial contract is not extinguished by her intermarriage with the obligee. *Clark* v. *Clark,* 49. Ill. App. 163.

There can scarcely be found a more learned or interesting discussion on the subject of modification, by modern statutes, of the rules of the common law, with respect to the rights and liabilities of married women, than the opinion of Judge RIDDICK in the case of *Kies* v. *Young,* 64 Ark. 381, where it was held that (quoting from the syllabus) ''The common law liability of a husband for his wife's ante-nuptial debts has not been abrogated by the married woman's act which excludes the marital rights of the husband in the wife's property during coverture, and confers upon married women power to acquire and hold property.''

The rule laid down in that case was subsequently abrogated by statute relieving the husband from liability for the wife's ante-nuptial debts, but the luminous discussion of the law by Judge RIDDICK still remains for our guidance upon analogous questions. It can not be contended that the statutes of this State have in express terms abrogated the common law rule governing

the question involved in the present case any more than they did the question involved in the case just referred to, but the question for determination in this case is, as it was in that, whether the reasons for the common law rule have been abolished by statutes so as to cause the rule itself to cease.

(2)   In *Kies* v. *Young, supra,* the court decided that all of the reasons for the common law rule, so far as it related to the liability of a husband for the ante-nuptial debts of his wife, had not ceased with the changes in the law wrought by modern statutes, and that, therefore, the rule itself had not ceased as a part of the law of this State.   But it does not follow that the same can be said of the question now before us concerning the extinguishment of the liability of the wife for her ante-nuptial debts.   On the contrary, it seems to us that the provisions of the Constitution and statutes of this State, which sweep away almost entirely the husband's common law right to take or control the property of his wife, do completely abrogate the common law rule that an ante-nuptial debt is extinguished by the intermarriage of the parties.   The husband can not sue at law to enforce the obligation because the statutes do not confer that remedy, but the obligation remains unextinguished and may be enforced in equity.   The principal reason why this court upheld the liability of the husband for the ante-nuptial debts of the wife, according to the common law rule, is that, while the Constitution and statutes of the State give the wife the right to hold her property so long as she may choose, and to sue and be sued on her obligations with respect to her separate estate incurred during coverture, those rights to hold her own property are limited to her exercise of the choice to claim it, and that this does not entirely take away the husband's rights, so that it can be said that the reason for holding the husband liable for the debts has ceased.   It is pointed out in the decision that the wholesomeness of the common law rule in that respect is not affected by modern enactments, because the wife may choose not to take

her property but to allow her husband to take it, and that as there is no provision in the statute for her to be sued on an ante-nuptial obligation, there would be no remedy for the creditor unless the common law remedy against the husband is preserved. The reasons there stated have no application to the present case where the ante-nuptial obligation of the wife to the husband is under consideration, and where she has the choice of holding her property and of disposing of it at will without the consent of the husband there is no reason why the common law rule extinguishing her obligation to the husband should still prevail. It has long been the law of this State that an obligation of husband and wife, even during coverture, while unenforceable at law, is binding and enforceable in equity. *Pillow* v. *Sentelle,* 49 Ark. 430. We have held, too, that where there exists a valid obligation of one of the spouses to the other, the remedy is not suspended during coverture, but that the obligation may be enforced in a court of equity. *Lawler* v. *Lawler,* 107 Ark. 70; *Shane* v *Dickson,* 111 Ark. 353. The question can not be said to be entirely free from doubt, but we believe the true, the just and the logical rule to be that the common law doctrine on this subject has been modified and that the unity of the parties to the marriage has been destroyed to the extent that obligations incurred before the marriage relation was entered into are not extinguished by it.

We are, therefore, of the opinion that the learned chancellor reached the wrong conclusion on the question involved, and his decision must be reversed with directions to enter a decree in accordance with this opinion.

Wood and Hart, JJ., dissent.